# COMMONWEALTH v. JAMES C. BIDDLE.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SESSIONS OF PHILADELPHIA COUNTY.

139  605<br>
191  588<br>
139    605<br>
214   4428<br>
139    605<br>
33 SC 4559

Argued April 7, 1890—Re-arg't ordered May 5, 1890.
Re-argued January 12, 1891—Decided February 2, 1891.

(a) The act of April 26, 1887, P. L. 61, amending § 14, act of April 4, 1873, P. L. 20, prohibits any person or persons, etc., from " paying, or receiving, or forwarding any premiums, applications for insurance, or in any manner securing, helping or aiding in the placing of any insurance," etc., with any foreign insurance company or association, unauthorized to do business in this state :

1. The prohibition applies to persons, etc., who as insurance agents or brokers do business with unauthorized foreign insurance companies or associations, as the brokers or agents of other parties, and not to persons, etc., who, as owners, make single contracts of insurance with such companies or associations upon their own property.

2. It may be conceded that a statute which should attempt to prevent a non-resident owner of property in this state, or a resident owner not at the time within the state, from insuring his property in any manner lawful in the place of the contract, would be void as extra-territorial.

3. So, also, it may be conceded that if a citizen of Pennsylvania has incurred a liability by a contract validly made outside its boundaries, no law of this state can, under the constitution of the United States, prevent his fulfilment of that obligation, even by an act done within the state.

4. But, subject to constitutional limitations, the power of the legislature to declare any act done within the territory of the state unlawful or criminal, cannot be questioned; and considerations of policy, of hardship, of difficulty or even impossibility of general enforcement, must be addressed to the legislature.

Statement of Facts.

5. There is no doubt, therefore, as to the power of the legislature to make the insurance of property in an unauthorized foreign insurance company a criminal act on the part of the owner, but such an intent should not be attributed unless the terms of the act be plain, or the implication unavoidable.

Argued before PAXSON, C. J., STERRETT, CLARK, WILLIAMS and MITCHELL, JJ.; re-argued before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 187 January Term 1890, Sup. Ct.; court below, No. 398 June Term 1888, Q. S.

On June 20, 1888, the grand jury returned as a true bill an indictment charging that James C. Biddle, on July 13, 1887, at Philadelphia county, unlawfully did cause and procure the Cotton and Woolen Manufacturers' Mutual Insurance Company of New England, not lawfully authorized to do business in Pennsylvania, in consideration of the payment of a certain premium of $69.30, in cash, by Biddle & Weiss, of which firm said James C. Biddle was a co-partner, to enter into a contract by which the said company did insure the said Biddle & Weiss against loss or damage by fire to the amount of $5,580, for twelve months beginning, etc., on their cotton and woolen mill, in Philadelphia, and did then and there unlawfully forward and pay the said premium to the said insurance company, in the city of Boston, Mass. The defendant pleaded not guilty. Issue.

At the trial, on August 8, 1888, the jury returned a special verdict, in substance as follows:

In August, 1886, the defendant, a citizen of Pennsylvania, residing in Pennsylvania, insured his mills, situated in Philadelphia county, in the defendant company. The policy, made a part of the verdict, expired on August 1, 1887, and in anticipation of such expiration, the defendant, on July 13, 1887, took a new and renewal policy in the same company on the same property, for a term beginning August 1, 1887. This last mentioned policy was also made a part of the verdict. The renewal policy was effected as follows: In pursuance of the by-laws, the company's secretary gave notice to the defendant, by letter mailed from the office of the company in Boston, of

the approaching expiration of the first or original policy, wherein it was stated that his said first or original policy would be renewed, unless defendant should signify his desire to the contrary. To this notice the defendant sent no reply; and accordingly and in pursuance of such notice, he received from the said company, by letter mailed in Boston, Mass., the second or renewal policy. The defendant then drew his check for an amount including the premium under the renewal policy, for the purpose of paying said premium, to the order of a person in Providence, R. I., and caused that check to be forwarded by mail from Philadelphia to that person, who duly received it, and thereupon paid the premium, upon behalf of the defendant, to the said insurance company. In order to obtain the original policy, it was requisite that certain precautions against fire and contrivances to decrease the hazard should be taken, provided, and maintained by the defendant, and this was done by him at an expense of about $6,000. The said insurance company is an incorporation created by the laws of Massachusetts, and was not authorized to transact business under any statute of Pennsylvania providing for such authorization within Pennsylvania; and the said James C. Biddle had not obtained any license to procure said insurance, or made any application for a license under the act of April 26, 1887 [P. L. 61].

On August 11, 1888, the defendant moved for a new trial and in arrest of judgment, assigning the following reasons:

1. Because the contract was made out of the state of Pennsylvania, and the payments of premium were made obligatory by that contract, and were paid in pursuance thereof.

2–6. Because the act under which the indictment was framed, to wit, the act of April 26, 1887, P. L. 61, was obnoxious to § 10, article I., article XIV., and § 2, article IV., constitution of the United States; and to § 1, article IX., and § 3, article III., constitution of Pennsylvania.

7. Because the legislature had no power to prevent persons who are sui juris from making their own contracts.

On December 9, 1889, after argument of the foregoing motion before the court in banc, the motion for a new trial was refused, the motion in arrest of judgment overruled, without opinion filed, and judgment was passed that the defendant pay

Arguments.

a fine of $100, and the costs of prosecution, etc.   Thereupon, the defendant took this appeal, specifying that the court erred:

1, 2. In entering the judgment against the defendant on the special verdict.

3, 4. In not entering judgment for the defendant upon the special verdict, and in overruling the motion of the defendant in arrest of judgment.

*Mr. George M. Dallas, Mr. John G. Johnson* and *Mr. Robert Ralston* (with them *Mr. George L. Crawford*), for the appellant.

Counsel cited: (1) Section 14, act of April 4, 1873, P. L. 20; act of May 1, 1876, P. L. 53; List v. Commonwealth, 118 Pa. 322; act of April 26, 1887, P. L. 61.   (2) Godcharles v. Wigeman, 113 Pa. 431; Swan v. Insurance Co., 96 Pa. 37. (3) Garbracht v. Commonwealth, 96 Pa. 449; Commonwealth v. Fleming, 130 Pa. 138; Daniels v. Insurance Co., 12 Cush. 422; Heebner v. Insurance Co., 10 Gray 143; Todd v. Insurance Co., 3 W. N. 330; Newcomb v. De Roos, 29 L. J., Q. B. 4; Taylor v. Jones, 1 C. P. Div. 87; Kline v. Baker, 99 Mass. 253; Insurance Co. v. Tuttle, 40 N. J. L. 476; People v. Imlay, 20 Barb. 79; Santa Clara v. Railroad Co., 118 U. S. 396. (4) Sutton v. Clark, 7 W. N. 437; Shonk v. Brown, 61 Pa. 320, 327; Williams's App., 72 Pa. 214, 217; Plankroad Co. v. Davidson, 39 Pa. 435; Ervine's App., 16 Pa. 256; Thirteenth St. Ry. Co. v. Boudrou, 92 Pa. 475; Horstman v. Kaufman, 97 Pa. 147; Sewickley Bor. v. Sholes, 118 Pa. 165.

*Mr. George S. Graham*, District Attorney, and *Mr. Wm. S. Kirkpatrick*, Attorney General, for the commonwealth.

Counsel cited: (1) Act of March 10, 1810, 5 Sm. L. 106. (2) Columbia Ins. Co. v. Kingon, 8 Vroom 35; List v. Commonwealth, 118 Pa. 322; Paul v. Virginia, 8 Wall. 181. (3) Pembena Co. v. Pennsylvania, 125 U. S. 181; Philadelphia Ass'n v. New York, 119 U. S. 110; Augusta Bank v. Earle, 13 Pet. 536; Commonwealth v. Alger, 7 Cush. 58, 84; McKellar v. Kansas, 103 U. S. 623; Munn v. Illinois, 94 U. S. 113; Slaughter House Cases, 16 Wall. 36; Doyle v. Insurance Co., 94 U. S. 535.   (4) Commonwealth v. Green, 58 Pa. 226; Allegheny Co. Home's App., 77 Pa. 77; State Line R. Co.'s

Opinion of the Court.

App., 77 Pa. 429; Fox's App., 112 Pa. 337; Dewhurst v. Allegheny, 95 Pa. 437. (5) Powell v. Pennsylvania, 127 U. S. 678; Barbier v. Connolly, 113 U. S. 27; Yick Wo v. Hopkins, 118 U. S. 356; Powell v. Commonwealth, 114 Pa. 265.

OPINION, MR. JUSTICE MITCHELL:

It may be readily conceded that an act which should attempt to prevent a non-resident owner of property in this state, or a resident owner not at the time within its territory, from insuring his property in any manner lawful in the place of contract, would be void as extra-territorial. So, also, it may be conceded that if a citizen of Pennsylvania has, by a contract validly made outside of its boundaries, incurred a liability, no law of this state can, under the constitution of the United States, prevent his fulfilling that obligation, even by an act done within the state. But, beyond the limitations imposed by the constitution, the power of the legislature to declare any acts done within the territory of the state unlawful or criminal cannot be questioned, and all considerations of wisdom or policy, of hardship, of difficulty or even impossibility of general enforcement, must be addressed to the law-making branch of the government.

We entertain, therefore, no doubt of the power of the legislature to make the insurance of his property in an unauthorized foreign company by an owner, criminal, if done in this state. But such a statute would be, not only an unusual, but a very harsh and extreme interference with the general right of a citizen to manage his private affairs in his own way, and we should not attribute such an intent to the act in question, unless its terms be plain or the implication unavoidable.

The act of April 26, 1887, P. L. 61, is a supplement to the act of April 4, 1873, P. L. 20, "to establish an insurance department," and its title sets out that it is an act "providing for the further regulation of foreign insurance companies, and relating to agents and others doing business with unauthorized insurance companies," etc. It is, in fact, an amendment and enlargement of a single section, § 14, of the previous act. That section provided that "Any person or persons or corporation receiving premiums, or forwarding applications, or in any other way transacting business for any insurance company, not of this state, . . . . shall forfeit and pay to the commonwealth

the sum of five hundred dollars for each month, or fraction thereof, during which such illegal business was transacted; and any company, not of this state, doing business without authority, shall forfeit a like sum," etc. This section was limited by its express terms to the foreign corporations, and those doing an insurance business for them, "receiving premiums, or forwarding applications, or in any other way transacting business *for* any insurance company," etc. But it is common knowledge that there is a very large line of insurance business, by brokers, solicitors and others, which cannot be said to be done for any particular company or class of companies, inasmuch as the broker is employed by and represents not the insurer, but the person seeking insurance. This kind of insurance business was left untouched by the act of 1873. The act of 1887 amends the section quoted so as to read, " any insurance company, not of this state, doing business without authority, . . . . . shall forfeit," etc.; and "any person or persons, or any agent, officer, or member of any corporation, paying or receiving or forwarding any premiums, applications for insurance, or in any manner securing, helping, or aiding in the placing of any insurance, or effecting any contracts of insurance, . . . . directly or indirectly, with any insurance company not of this state, and which has not been authorized," etc.

It may be noticed in the first place that the order of the prior statute is transposed; insurance companies are put first, and then other parties doing the prohibited acts. Prominence is thus given to the intent to exclude the foreign companies, unless they come under the regulations of the law; and they are first mentioned, and then the other persons intended to be included in the act. These are "any person or persons, or any agent, officer, or member of any corporation,"—words certainly of very general scope; but, when we look at the prohibitions, we find they are from paying or receiving, forwarding, securing, helping, or aiding in placing insurance, or effecting any contracts, etc., and the prohibited acts themselves are all expressed in the plural,—premiums, applications, contracts. These phrases are not applicable to an owner making a single contract of insurance on his own property. They apply to agents, brokers, and others doing an insurance business. Nor were they carelessly or inadvertently used. The act is a carefully-

drawn supplement to the prior act of 1873, which was itself an elaborate and well-considered statute, covering the whole ground of a very important subject. The new act is to be read as a section of the prior one; and their object was the same, to control and regulate the business of insurance. As already seen, the first act covered the case of agents and others doing business for foreign companies, but did not cover the case of brokers and others doing business with them for other parties. The plain intent of the later act was to reach such persons, and the language used is apt for that purpose. It was put in the most general terms; but read with reference to the subject matter and the context, it was clearly intended to apply only to the business of insurance. Every one in the line of that business, whether as agent or solicitor for a foreign company, or as broker or agent for parties seeking insurance, was included; but there is nothing to indicate that the legislature meant to go further than that. This would be the natural and appropriate meaning of the act, read, as it must be, in its place as the amended fourteenth section of the act of 1873, upon general principles of construction. And certainly, when we are asked to say that the legislature meant so unusual and extreme an interference with the rights of citizens in the management of their own private affairs, we may demand that such intent shall be shown in clear and unambiguous words.

The special verdict shows that the appellant's act was not within the statute.

> Judgment reversed, and now judgment for the defendant on the special verdict.