J. J. Cowan *v.* London Assurance Corporation.

73  321
e87  526
q87  531

Insurance. *Suit for premiums. Foreign insurance company. Failure to*
*comply with statutory regulations. Nonpayment of privilege tax.*
*Code 1880, §§ 1073, 1074, 1075 and 589.*

A foreign insurance company cannot recover, in the courts of this
state, for premiums alleged to be due, when at the time of pay-
ment it had not complied with the statutes of this state prescrib-
ing the method to be pursued by such companies desiring to do
business therein, nor paid the privilege tax and procured the
license required to carry on such business therein, in default of
the payment of which tax and the procurement of which license,
all contracts made by such delinquent company in reference to
such business are rendered null and void by statute, so far as it
may base any claim thereon.

From the circuit court of Warren county.

Hon. John D. Gilland, Judge.

The appellee, a foreign marine insurance company, brought
its action against the appellant, a cotton broker, residing at
Vicksburg, to recover the aggregate amount of certain premi-
ums for fire insurance on cotton paid by the appellant, on the
request of appellee that he would have the cotton insured for a
certain amount in local agencies, for its benefit, which premi-
ums were credited to appellant on settlement of his account
with the appellee, the appellee's claim being based on the fact
that there had never been any valid insurance of the cotton
effected by the appellant, who, although the cotton, as he knew,
was already insured by the appellee, negligently accepted poli-
cies containing a condition that the same should not apply to
any cotton covered by other insurance.   On a former appeal
from a judgment in favor of the defendant, the supreme court
held that the plaintiff was entitled to recover, and reversed the

judgment, and remanded the cause for a new trial.    71 Miss., 928.    The cotton was in Vicksburg, and the policy issued thereon by appellee was an open one in favor of the appellant, authorizing subsequent insurance, and providing for contribution in case of loss, the compensation of the insurer being eight cents per bale on all cotton handled by appellant during the season covered by the policy.    The amount due to the appellee on this open policy, at the time of settlement, exceeded the amount expended by the appellant, at appellee's instance, for insurance in local agencies, and the settlement was consummated by the appellant's paying the difference between them.    The negotiation resulting in the issuance of the open policy by the appellee, and the undertaking of the appellant to procure the subsequent insurance, was conducted in part by correspondence between the appellant, at Vicksburg, and the appellee's manager, in New York, and in part by interviews between said manager and appellant's agent in the latter city.    The open policy issued by the appellee insured against "fires," and covered the cotton while situated in "presses," as it in fact was and continued to be.    The events out of which the controversy arose occurred prior to the adoption of the code of 1892.

The appellant's seventh plea set up that the appellant resided, and the cotton was situated, in Mississippi, and that the appellee, a foreign insurance company, was doing business as such in said state, and had not complied with § 1073 of the code of 1880, or procured the requisite certificate of the auditor of public accounts; that such business was unlawfully carried on, and, the said open policy having been issued in the course thereof, the appellee could not maintain its suit, which, in effect, was one for the recovery of part of the premiums on the same.

The appellant's eighth plea set up the issuance of the open policy, and the other facts above related going to show that appellant was doing business in Mississippi, as the residence of the appellant at Vicksburg, and the situation of the cotton at the same point, etc., that the money sued for was really pre-

miums on said open policy, and that the appellee had never paid any privilege tax or procured any license authorizing it to carry on business in Mississippi, and that the said contract was void, and appellee could not recover for premiums due thereon. A demurrer filed by the appellee was overruled, and a second trial had on the issues tendered by the above pleas. The court refused to grant an instruction asked by the appellant, predicated of the facts set up in said pleas, and gave a peremptory instruction in favor of the appellee. From the judgment in favor of the appellee an appeal was prosecuted.

The sections of the code of 1880, relied upon by the appellant, are as follows:

" 1073. It shall not be lawful for any agent of any insurance company incorporated by any other state than the State of Mississippi, directly or indirectly to take risks or transact any business of insurance in this state without first procuring a certificate of authority from the auditor of public accounts; and, before obtaining such certificate, such agent shall furnish to the said auditor a statement, under the oath of the president or secretary of the company for which he may act, which statement shall show:

" (1) The name and locality of the company.

" (2) The amount of its capital stock.

" (3) The amount of its capital stock paid in.

" (4) The assets of the company, including, first, the amount of cash on hand and in the hands of agents or other persons; second, the real estate, unincumbered; third, bonds owned by the company, and how they are secured, with the rate of interest thereon; fourth, debts to the company secured by mortgage; fifth, debts otherwise secured; sixth, debts for premiums; seventh, all other securities.

" (5) The amount of liability, due or not due, to banks or other creditors by the company.

" (6) Losses adjusted and due.

" (7) Losses adjusted and not due.

"(8) Losses unadjusted.

"(9) Losses in suspense, waiting for further proof.

"(10) All other claims against the company.

"(11) The greatest amount insured in any one risk.

"(12) The greatest amount allowed by the rules of the company to be insured in any one city, town or village.

"(13) The greatest amount allowed to be insured in any one block.

"(14) The act of incorporation of the company.

"(15) The certificate of deposit of the state treasurer, as hereinafter provided.

"This statement shall be filed in the office of said auditor, together with a written instrument, under the seal of the company, signed by the president and secretary, authorizing such agent to acknowledge service of process, for and on behalf of such company, consenting that service of process upon such agent shall be taken and held to be as valid as if served upon the company according to the laws of this state, and waiving all claim of error by reason of such service; and no insurance company, or agent of any insurance company, incorporated by any other state, shall transact any business of insurance in this state, unless such company is possessed of at least one hundred and fifty thousand dollars of actual capital, invested in stocks of at least par value, or in bonds or mortgages of real estate worth double the amount for which the same is mortgaged; and upon filing the aforesaid statement and instrument with the auditor, and furnishing him with satisfactory evidence of such investment, as aforesaid, it shall be the duty of said auditor to issue a certificate thereof, with authority to transact business of insurance, to the agent applying for the same.

"1074. It shall be unlawful for any agent of any company incorporated by any foreign government other than a state of this union, to transact any business of insurance in this state without procuring a certificate of authority from the auditor, such agent having first filed, under oath, in the office of said

auditor, a statement setting forth the charter or act of incorporation of the company for which he may act, and the matters required by the last preceding section, and the authority mentioned, and furnishing evidence, to the satisfaction of the auditor, that such company has invested in the stocks of some one or more of the states of this union of the United States, of at least par value, the amount of one hundred and fifty thousand dollars, and that such stocks are held by citizens of the United States; and the said agent of such company filing said statement, and furnishing evidence of investment, as aforesaid, shall be entitled to a certificate of authority in like manner as is provided for in the preceding section.

"1075. It shall be the duty of the agent, in either of the foregoing sections mentioned, before taking any risks or transacting any business of insurance in this state, to file in the office of the chancery court of the county in which he may desire to establish an agency for such company, a copy of the statement required to be filed with the auditor, as aforesaid, together with the certificate of said auditor, which shall be carefully preserved, for public inspection, by said clerk."

*Dabney & McCabe,* for the appellant.

The evidence shows that during the time covered by the transaction under review, the latter part of 1891 and early part of 1892, the appellee had not complied with the law either as to the payment of a privilege tax or as to the filing of statements, etc.   Code 1880, §§ 589, 1073, 1074, 1075.

It is equally clear that it was then doing business in Mississippi, and that its open policy was issued to appellant in the course of such business.   It was delivered to him and accepted by him in said state.   It was a fire policy, covering by its terms "all risks," including risks in presses, railroad depots, sheds, etc., and accepting all the perils of "fires," etc.   Under such circumstances the appellee had no right to sue for premiums owing to it on said policy, and resulting from its violation

of the law. *Phœnix Insurance Co.* v. *Pollard,* 63 Miss., 641; *Moses* v. *State,* 65 *Ib.,* 56; *Williams* v. *Bank,* 71 *Ib.,* 867; 1 May on Ins., §§ 66, 66*a*; Clement's Ins. Digest, §§ 129, 164; *Lycoming Ins. Co.* v. *Wright,* 55 Vt., 526; 11 Am. & Eng. Enc. L., p. 281; *Hebner* v. *Eagle Ins. Co.,* 69 Am. Dec., 313; *Equitable Life Ins. Co.* v. *Clements,* 140 U. S., 226; *Knights Templar* v. *Berry,* 50 Fed. Rep., 511; *Sadler* v. *Ins. Co.,* 60 Miss., 391.

There is no force in appellee's reference to the act 1882. Acts, p. 166. That act is not in conflict with the general law, and, moreover, confers no rights upon one situated like the appellee. There is no replication setting up this act, and alleging performance of its conditions, nor any showing that the present case is one to which it is applicable.

*Booth & Anderson,* for the appellee.

An examination of §§ 1073 and 1085, of the code of 1880, shows that they were not intended to apply to a man who, as appellant did in this case, takes out insurance for himself, or on his own account. The latter section defines who is an agent within the meaning of the law, and especially excepts from its operation, in plain and unambiguous language, a man taking insurance " for himself," and the meaning of this provision has been, inferentially, interpreted by this court. *Sadler* v. *Ins. Co.,* 60 Miss., 393.

Section 1087, of the same code, very clearly shows that what is meant by the term " transacting any business in this state," as set forth in § 1085, is the doing of those things enumerated in the latter section, and within the exception to which the appellant comes, as the policy in this case was for himself. The case of *Moses* v. *State,* 65 Miss., 56, does not militate, in any way, against our position. If there the appellant had the right to apply to the appellee, in New York, for this insurance, it would follow, logically, that the appellee had the corresponding right to issue its policy, and, if it became necessary, to sue

in this state for the premiums earned thereunder. Surely it was not designed that a citizen of this state could go abroad and make contracts, and the right to enforce them in this state be denied to the persons with whom he contracted. But if mistaken in the above view, the validity of policies like the one in question had already received statutory recognition in this state. Acts 1882, p. 166. *Sun Mutual Ins. Co.* v. *Vicksburg,* 72 Miss., 67. The appellee relies with confidence upon the following conclusions: (1) The contract was made in the city of New York on defendant's application, and not in the State of Mississippi; (2) the appellee was not liable for the privilege tax prescribed by § 589, code of 1880, for a business carried on in violation of that statute; (3) the appellee was not "transacting business in this state" within the meaning of §§ 1073, 1074 and 1085, code of 1880; (4) in issuing its policy, under the circumstances stated, for appellant's own benefit, the appellee was doing what it was authorized to do by said § 1085.

Woods, J., delivered the opinion of the court.

This is an action by a foreign insurance company which has not complied with our statutes in any of the particulars prescribing the method to be pursued by such companies desiring to do business in this state, and which had not paid the privilege tax and procured the license required to carry on such business in this state, for premiums due on a policy of insurance issued to appellant.

The policy of our law is to protect our citizens against irresponsible companies—against insurance which does not insure—and, to that end, certain important acts are to be done in the manner and at the time prescribed, as preliminary to taking any risks or transacting any business of insurance in this state. Plainly the appellee has done none of these acts, and equally plainly this suit is an effort to use the courts of the state to coerce payment of premiums alleged to be due on a policy issued by the appellee without such compliance with our law.

It is the transaction of insurance business to collect premiums, and a most important transaction to both the insurer and the insured. Surveys of property cannot be made in the state by companies failing to comply with our statutes, applications cannot be taken for insurance in the state, and losses cannot be adjusted in the state, for all these are acts done in the transaction of insurance business in the state. No agent of such foreign insurance company can come into the state and collect premiums on a policy issued even elsewhere by such company, for the prohibition is sweeping, inflexible and universal. That the courts of the state cannot be used for the compulsory collection of premiums on policies so issued is too plain for extended argument.

In *Moses* v. *State*, 65 Miss., 56, it was held that an agent of a foreign company which had not complied with our laws so as to be entitled to do business here, could not come into the state, after the destruction by fire of the insured property, to examine into the loss, take proofs and determine the amount thereof. This question is perfectly covered by the case just cited and by the case of *Lemonius* v. *Mayer*, 71 Miss., 514. See *Rose* v. *Kimberly & Clark Co.*, 27 L. R. A., 556, and *Seamans* v. *Temple Co.*, 28 L. R. A., 430, cases almost identical, in their leading features, with the case in hand.

*Reversed and remanded.*

*Booth & Anderson*, for the appellee,

Filed the following suggestion of error:

No question of public policy was involved in the appellant's applying for and procuring, in New York, the insurance in question. ·The accepted definition of the term "public policy" does not admit of any other conclusion. 19 Am. & Eng. Enc. L., p. 565. It would seem to be more violative of public policy for the state to clothe its citizens with the right to go abroad, and make contracts for insurance on their property within our limits, and, then, when they are called on to pay the premiums which they were empowered to contract for, deny

relief in our courts to the companies contracted with. The effect of such a ruling will be that our citizens will be able to insure in those companies alone that have complied with our laws. The case of *Rose* v. *Kimberly & Clark Co.*, 27 L. R. A., 556, is not applicable, in view of the peculiar character of our statute. The case of *Seamans* v. *Temple Co.*, 28 L. R. A., 430, is unlike the one at bar. The parties representing the company, calling themselves "inspectors," went into the state of Michigan, examined risks, took applications, etc., and the court held, and correctly, that they were agents, and came within the condemnation of the statute.

The case of *Moses* v. *State*, 65 Miss., 56, was not a case where one, on his own behalf, took out a policy in a foreign company. The only case approaching a construction of the statute is that of *Sadler* v. *Insurance Co.*, 60 Miss., 394. The act of March 9, 1892, fully recognized the validity of policies like the one in question.

COOPER, C. J., delivered the opinion of the court in response to the suggestion of error.

Counsel for the appellee do not give to the prohibition declared by § 1073 of the code of 1880 its full effect, and therefore are impressed with the conviction that our decision is erroneous. Grant the premise that the thing done was not forbidden by the statute, and it follows as a corollary that the action for the premium may be maintained; but if the thing done was in violation of the law, it is equally certain that, from the forbidden act, no right of action to be pursued in the courts of this state could arise. The statute declared that "it shall not be lawful for any agent of any insurance company, incorporated by any other state than the State of Mississippi, directly or indirectly, to take risks or transact any business of insurance, in this state, without first procuring a certificate of authority from the auditor of public accounts," etc. The plaintiff's declaration, and all the evidence, shows that the property

insured was in the city of Vicksburg, in this state.   The declaration in truth avers that the policy was "issued and delivered" in said city, but as the evidence discloses that the contract was in fact made in the city of New York, and the pleadings might be amended to show that fact, we have dealt with the case as though the real allegations of the declaration corresponded with the proof.

We have held, and we think correctly, that a contract made in New York by a citizen of this state, with a foreign insurance company which has not complied with our laws, insuring property situated in this state, is a violation by such company of our statute, and, hence, that our courts are closed against such company's seeking to enforce any right springing out of or resting on the contact; that the insurance company is in such case taking a risk and transacting business in this state.

The cases cited in our opinion are precisely in point.   In *Seamans* v. *Temple Co.*, the court, responding to the argument that the contract was not made in the state, said: "If it be conceded that the contract was made in Wisconsin, and that the premiums and loss, if any, are payable there, it is as much in contravention of the policy of this state as though it had been made here.   It cannot be supposed that the statutes were intended merely to prevent the act of making the contract in this state.   The object is to protect the citizens of this state against irresponsible companies, and to prevent insurance by unauthorized companies upon property in this state."   In *Rose* v. *Kimberly & Clark Co.*, the court said: "The evil to be corrected is not the writing of a policy by an unlicensed company in this state, but the writing of a policy at all."   The whole question, however, was definitely settled in *Moses* v. *State*, 68 Miss., 56.   In that case a contract of insurance had been made in the city of New Orleans, La., by a citizen of Georgia, with a company organized under the laws of Louisiana, but insuring property situated in this state.   The property was destroyed by fire, and an adjuster of the company came into the state to

examine into the loss. He was indicted and convicted for acting as an agent of a foreign company doing business in this state without having complied with our laws, and that conviction was affirmed by this court and afterwards by the supreme court of the United States.

Moses was indicted under sections of the code which declared what acts should fix the character of agent for insurance companies on the actor, and making it a misdemeanor to so act for a foreign insurance company which had not complied with our laws. Among other acts creating such agency, it was, *inter alia*, declared that any person "who solicits insurance, . . . or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect or transmit any premiums of insurance . . . other than for himself, or who shall examine into or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, . . . shall be held to be the agent of the company for which the act is done."

Moses was indicted and convicted for coming into this state to adjust a loss arising under a policy issued under a contract of insurance, made in another state, on property situated in this state. Now, by the same statute, it is as much a misdemeanor to "collect and transmit a premium" as to adjust a loss. It would be a strange condition of things if the courts of this state should be open to enforce against Cowen the payment of a premium which no person could lawfully have received from him and transmitted to the company. What would be done with the money if a judgment should be rendered requiring its payment? The zealous and estimable counsel who represent the appellee could not accept and transmit it, for it is sued for as a premium, would be paid as a premium and transmitted as a premium collected on a contract prohibited by law, and the receipt and transmission of premiums on which is, by law, made a misdemeanor. The act of March 9, 1882 (Acts, p. 166), did not operate as a repeal of the code provisions. By the first

section of that act, authority was given to the municipality of Vicksburg, extended also by the fifth section to other municipalities having organized fire departments, to levy and collect a privilege tax upon each fire insurance company transacting business in said city. By the third section it was provided that persons having insurance, on property in the city, in companies not authorized to do business in the state, should pay to the city one-fourth of one per cent. of the amount insured. This was levied upon the policy holders for the manifest reason that such foreign companies could not be directly reached, and, hence, the policy holders, having the benefit of the security afforded by the fire department, were themselves taxed. But there is in the act no suggestion of a purpose to mitigate the consequences declared by the code against foreign companies which had not complied with our laws. We are entirely satisfied with the judgment we have heretofore rendered, and a

*Suggestion of error overruled.*