JAMES B. SWING, TRUSTEE, ETC., *v.* BENJAMIN E. BRISTER
ET AL.

[40 South. Rep., 146.]

1. INSURANCE.  *Foreign company.  Business.  What constitutes.  Code* 1880, § 1073.  *Laws* 1890, *ch.* 4, *p.* 15.

The bringing of a suit in this state by a trustee for the creditors of a foreign mutual fire insurance company to collect assessments imposed on members by the judgment of a court of a sister state is not the transacting of insurance business in this state, within the meaning of Code 1880, § 1073, Laws 1890, ch. 4, p. 15, prescribing the conditions on which foreign insurance companies may do business in this state.  *Cowan* v. *London, etc., Corporation,* 73 Miss. 321, distinguished.

2. SAME.  *Policy of fire insurance.  Construction.  Situs of contract.*

Where a citizen of this state, through brokers residing in another state, applied to a foreign insurance company, having no agent in this state, for a policy of fire insurance on property in this state, and the same was written out of this state at the domicile of the foreign company, the contract is not a Mississippi contract, and is not void because the insurer had not complied with the statutes of this state.  Code 1880, § 1073, Laws 1890, ch. 4, p. 15, prescribing conditions upon which foreign insurance companies may do business in this state.

3. SAME.  *Suits.  Constitutional law.  Fourteenth amendment United States constitution.*

A foreign insurance company, which has never transacted an insurance business in this state, may sue in the courts here for the collection of a premium on a contract of insurance made by a citizen of this state at the domicile of the company, although the property insured be in this state and the company had not complied with the statutes of this state prescribing the conditions under which foreign insurance companies may do business in this

state, since to construe the statutes as denying such right would be to render them unconstitutional, as violative of the fourteenth amendment to the constitution of the United States with respect to due process of law.

4. STATUTE OF LIMITATIONS. *Contingent rights.*

Until liability on a cause of action ceases to be contingent and becomes absolute, the statute of limitations does not run against it.

FROM the circuit court of Lincoln county.

HON. MOYSE H. WILKINSON, Judge.

Swing, the appellant, as trustee for the creditors of the Union Mutual Fire Insurance Company, of Cincinnati, Ohio, was plaintiff in the court below; Brister and others, appellees, were defendants there. From a judgment in defendants' favor the plaintiff appealed to the supreme court. The facts are stated in the opinion of the court.

*H. Cassedy,* and *P. A. Reese,* for appellant.

The statutes of this state are constitutional, and do not assume to prevent citizens from entering into contracts of insurance outside of this state upon property in this state with insurance companies not authorized to do business within this state.

They do not assume to prevent our citizens from going or sending outside of this state and procuring insurance on property located in this state from any insurance company, whether it is authorized to do business in this state or not.

The fourteenth amendment to the constitution of the United States (sec. 1) provides that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Where the contract of insurance is made and the policy issued in another state (New York), it cannot be objected that the company has not complied with the laws relating to foreign

insurance companies doing business within the state (Arkansas) where suit is brought.    *Marin* v. *St. Louis,* 41 Fed. Rep., 643.

The negotiations were all carried on by mail, through agents in Tennessee, the loan being approved at the company's home office, in New York, and all notes being payable at that office. Held, that the contract was made in New York, and to be performed there, and that the company was not doing business in Tennessee within the meaning of the statutes.    *Eastern* v. *Bedford,* 88 Fed. Rep., 7.

Where an agent of a foreign insurance company, not authorized to make contracts for the company, but only to receive money or proposals or premium notes and forward them to the company for its action, receives from a person in Indiana a proposal for insurance and a premium note and forwards the same to the company in Illinois, the fact that the agent has failed to comply with the requirements of the statute of Indiana regarding foreign insurance companies doing business in that state, constitutes no defense to a suit brought upon such a note.    *Lamb* v. *Bowser,* 7 Bissell, 372.

A foreign corporation may litigate in Alabama without complying with constitutional and statutory provisions regulating its right to do business here.    *Christian* v. *American, etc., Co.,* 89 Ala., 198.

A foreign corporation may litigate in Arkansas without complying with the constitutional and statutory provisions regulating the right of foreign corporations to do business here.    *Railway Co.* v. *Fire Ins. Co.,* 55 Ark., 174 (18 S. W. Rep., 46).

A contract of insurance made out of this state on property here situated is valid and will be enforced herein.    *Columbia Fire Ins. Co.* v. *Kinyon,* 37 N. J. Law, 33.

A life policy issued by a foreign company is not rendered void by the neglect of the company to comply with the provisions of the act of April 16, 1867, providing for the incorporation and regulation of insurance companies, nor will such neglect in an

action brought against the company on the policy excuse the policyholder from paying premiums according to the terms of the policy. *Union* v. *McMillen,* 24 Ohio St., 67.

Taking an application for life insurance by an agent in Washington territory, and forwarding it to the insurance company in Kansas, which alone had authority to accept or reject the application, and where it was accepted, and a policy issued thereon, is not doing insurance business in said territory within the meaning of the statute thereof. *Macheny* v. *Leary,* 12 Ore., 40.

A statute which should attempt to prevent a nonresident owner of property in this state, or a resident owner not at the time within the state, from insuring his property in any manner lawful in the place of the contract, would be void as extra-territorial. If a citizen of Pennsylvania has incurred a liability by a contract validly made outside its boundaries, no law of this state can, under the constitution of the United States, prevent his fulfillment of that obligation, even by an act done within the state. *Commonwealth* v. *Biddle,* 139 Pa. St., 605.

*P. Z. Jones,* for appellees.

The appellant is thrashing old straw. The questions raised by his counsel in their brief have been decided adversely to their contention by previous decisions of this court. *Moses* v. *State,* 65 Miss., 56 (s.c., 3 South. Rep., 140); *Cowan* v. *London, etc., Corporation,* 73 Miss., 321 (s.c., 19 South. Rep., 298).

The whole question was definitely settled in *Moses* v. *State, supra.* In that case a contract of insurance had been made in the city of New Orleans, La., by a citizen of Georgia, with a company organized under the laws of Louisiana, who insured property in this state. The property was destroyed by fire, and an adjuster of the company came into the state to examine the loss. He was indicted and fined for acting as an agent of a foreign company doing business in this state without having complied with our laws, and that conviction was affirmed by this

court, and afterwards, it is stated by Judge COOPER in his opinion in *Cowan* v. *Assurance Corporation,* by the supreme court of the United States.

Moses was indicted under sections of the code which declared what acts should fix the character of agents and making it a misdemeanor to act for insurance companies which had not complied with our laws.    Among other acts creating such agency it is declared by Code 1880, § 1085, that any person "who solicits insurance, . . . or who so receipts for or delivers a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect, or transmit any premiums of insurance . . . other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such company, shall be held to be an agent of the company for which the act is done."

Now, by the same statute it is as much a misdemeanor to "collect and transmit a premium" as to adjust the loss.    It is even suggested by the court in *Cowan* v. *Assurance Corporation, supra,* that counsel who represent the insurance company cannot accept and transmit the premium on a contract prohibited by law, the receipt and transmission of premiums on which is by law made a misdemeanor.

The same is applicable to the case at bar, as, while this suit, strictly speaking, is not a suit to collect premiums, it is of the same nature, and the same principle applies to this case as though it were a suit, in the strictest sense of the word, to collect unpaid premiums.    It is an effort to collect in the courts in this state money due on a contract made with a company prohibited by the laws of this state from doing business in Mississippi.    The collection of the money due under the contracts with the company is, as suggested by the opinion in *Cowan* v. *Assurance Corporation, supra,* a most important transaction to both the insurer and the insured.

This suit is in the nature of a suit to recover unpaid subscrip-

tions for capital stock, and under Code 1892, § 844, the right to sue accrued when the corporation was adjudged insolvent. *Scott* v. *Windham,* 73 Miss., 76 (s.c., 16 South. Rep., 206); *Hatch* v. *Dana,* 101 U. S. (25 L. ed., 885); *McDonnell* v. *Insurance Co.,* 5 South. Rep., 120.

The corporation was adjudged insolvent December 18, 1890, and this suit was filed October 3, 1903—more than twelve years after the right of action, if any, accrued.

WHITFIELD, C. J., delivered the opinion of the court.

The Union Mutual Fire Insurance Company, of Cincinnati, was a mutual fire-insurance company incorporated under the laws of Ohio, May 27, 1887, and did business during the years 1888, 1889, and 1890.     The laws of Ohio (Rev. St. Ohio, 1905) appertaining to liability of appellees as members of this mutual society are as follows:

"Section 3634. Mutual fire-insurance companies organized under this act may thereafter charge and collect in advance upon their policies a full annual premium in cash, but such policies shall not compel subscribers insured, or assured, to renew any policy nor pay a second further annual or term premium.     Any such company must, in its by-laws, and must, in its policies, fix by a uniform rule the contingent mutual liability of its members for the payment of losses and expenses; and such contingent liability shall not be less than three nor more than five annual cash premiums as written in the policy; but such liability shall cease with the expiration of the time for which a cash premium has been paid in advance, except for liability incurred during said time. . : .

"Section 3650.     Every person who effects insurance in a mutual company and continues to be insured, and his heirs, executors, administrators, and assigns, shall thereby become members of the company during the period of insurance, and shall be bound to pay losses and such necessary expenses as accrue in and to the company in proportion to the original amount of their

deposit note or contingent liability; and the directors shall, as often as they deem necessary, settle and determine the sum to be paid by the several members thereof, and publish the same in such manner as they may choose, or as the by-laws prescribe, and the sum to be paid by each member shall always be in proportion to the original amount of liability, and shall be paid to the officers of the company within thirty days next after the publication of such notice; provided, that whenever such company is not possessed of cash funds above its reinsurance reserve sufficient for the payment of incurred losses and expenses, it shall be deemed to have impaired its capital; and when such impairment shall exceed twenty-five per cent of the reinsurance reserve required to be maintained, it shall make an assessment for the amount needed to pay such losses and expenses upon its members liable to assessment therefor in proportion to their several liabilities, and to make good the reinsurance reserve; and no such company shall borrow money or create a debt, unless for the purpose of necessary office buildings, to continue beyond the period when such assessment may be collected and applied to the payment thereof, and no member shall be assessed for liabilities incurred prior to his membership."

The appellees were, during the year 1890, and are now, a partnership doing business as B. E. Brister & Co., and, as such firm, accepted from said insurance company three policies of insurance issued by said insurance company to said firm, insuring the property of said firm from loss by fire and lightning. These three policies were, respectively, for the sums of $1,000, $750, and $487.50. The contingent liability for assessment of said firm as a policyholder in said insurance company, as provided by the statutes of Ohio, was not less than three, and not more than five, annual cash premiums. These premiums, on these three respective policies, were, respectively, as follows: $60, $43.15, and $19.50. By a decree of the supreme court of Ohio, rendered June 11, 1901, the assessment of said firm's liability

on these policies was fixed at five times the accrued annual premium, as stated above.

The decree of the supreme court of Ohio referred to is as follows:

"And it is hereby decreed that the following assessments shall be made against all persons who held policies of insurance in said company on and between April 25, 1889, and December 18, 1890, as follows: First quarter—Between and including April 25, 1889, and June 30, 1889, the amount of unpaid liabilities incurred by said company, including interest and expenses of collection, is $8,916.67, and the total amount remaining unpaid of premium notes and contingent liability of persons then holding policies and now solvent was $126,117.94, and the assessment on said premium notes and contingent liability shall be 7.0701 per cent. Second quarter—Between and including July 1, 1889, and September 30, 1889, the amount of unpaid liabilities incurred by said company, including interest and expense of collection, is $6,113.55, and the total amount remaining unpaid of premium notes and contingent liability of persons then holding policies and now solvent was $179,417.62, and the assessment on said premium notes and contingent liability shall be 4.8248 per cent. Third quarter—Between and including October 1, 1889, and December 31, 1889, the amount of unpaid liabilities incurred by said company, including interest and expense of collection, is $8,656.69, and the total amount remaining unpaid of premium notes and contingent liability of persons then holding policies and now solvent was $179,417.62, and the assessment on said premium notes and contingent liability shall be 4.8248 per cent. Fourth quarter—Between and including January 1, 1890, and March 31, 1890, the amount of unpaid liabilities incurred by said company, including interest and expense of collection, is $14,400.62, and the total amount remaining unpaid of premium notes and contingent liability of persons then holding policies and now solvent was $205,154.48,

and the assessment on said premium notes and contingent lia-
bility shall be 7.0194 per cent.    Fifth quarter—Between and
including April 1, 1890, and June 30, 1890, the amount of
unpaid liabilities incurred by said company, including interest
and expense of collection, is $3,690.62, and the total amount
remaining unpaid of premium notes and contingent liability of
persons then holding policies and now solvent was $201,026.33,
and the assessment on said premium notes and contingent liabil-
ity shall be 1.8358 per cent.    Sixth quarter—Between and
including July 1, 1890, and September 30, 1890, the amount of
unpaid liabilities incurred by said company, including interest
and expense of collection, is $62,768.40, and the total amount
remaining unpaid of premium notes and contingent liability of
persons then holding policies and now solvent was $224,096.63,
and the assessment on said premium notes and contingent liabil-
ity shall be 28.0095 per cent.    Seventh quarter—Between and
including October 1, 1890, and December 18, 1890, the amount
of unpaid liabilities incurred by said company, including inter-
est and expense of collection, is $81,347.72, and the total amount
remaining unpaid of premium notes and contingent liability of
persons then holding policies and now solvent was $199,729.29,
and the assessment on said premium notes and contingent liabil-
ity shall be 40.7289 per cent."

The declaration avers all the facts which we have set out, and
then proceeds to aver that said decree of assessment is still in full
force and effect, and that the amount of appellees' proper assess-
ment under said decree was $211.43; that the said Union
Mutual Fire Insurance Company was dissolved and disincorpo-
rated by the supreme court of Ohio on December 18, 1890;
that the appellant was appointed trustee for the creditors and
policyholders of said company, which trust he accepted, and
thereafter qualified, and that he has been since acting as said
trustee, and brings this action, by order of said decree of said
court above set out; and that, though notified of their liability

to pay said assessment—$211.43—appellees have refused to pay any part thereof, and for that reason this suit was brought to recover the same. To this declaration the defendants pleaded, as a special plea, that the appellant could not maintain this action, because the company had no authority to transact the business of fire insurance in this state on July 1, 1890, when the three policies were issued by said insurance company to defendants to indemnify them for loss by fire on property situated in Lincoln county, Miss., for the reason that the said insurance company had not secured a certificate from the auditor of this state, as provided in Code 1880, § 1073, and Laws 1890, ch. 4, pp. 15, 16, and for the further reason that said company had not, on said date, paid the privilege tax of $1,000 levied by the laws of Mississippi annually on fire-insurance companies doing business in this state. To this special plea the appellant replied, admitting that the said company had no authority to do business in this state on July 1, 1890, and that it had not secured the said certificate from the auditor of public accounts, as provided in the statute referred to, and that it had not paid the privilege tax referred to, but insisted in the replication "that the said policies were not written in the state of Mississippi, and that said insurance company was not doing business in this state, at said time; that it had no agent in this state doing business for it at said time; that the said policies were written at the home office of said insurance company, and were applied for by the defendants through a firm of insurance brokers of Indianapolis, Ind., who represented the defendants; and that said contracts of insurance were made wholly without the state of Mississippi—to wit, in the state of Ohio." To this replication to the special plea the appellees demurred on the single ground that it was insufficient in law and presented no defense. The court below sustained this demurrer, and, the plaintiff declining to amend his declaration, the suit was dismissed at the cost of the plaintiff, from which judgment this appeal was prosecuted.

It is earnestly insisted by counsel for the appellees that the action of the court below should be affirmed on the authority of the cases of *Moses* v. *State,* 65 Miss., 56 (3 South. Rep., 140), and *Cowan* v. *London Assurance Corporation,* 73 Miss., 321 (19 South. Rep., 298; 55 Am. St. Rep., 535). The Moses case has no sort of application here, for in that case an adjuster of the insurance company came into this state and transacted here the business of adjusting the losses. It must be admitted, however, if the language of COOPER, J., in *Cowan* v. *Assurance Corporation, supra,* in response to the suggestion of error filed in that case, is correct, that the reasoning of that response sustains the learned counsel for appellee. We have been at the pains to examine the original record on file in this court in the case of *J. J. Cowan* v. *London Assurance Corporation,* No. 8284, and we find the following to be the facts of that case as to the point whether the contract was a New York contract or a Mississippi contract. The seventh plea for the defendant in that case expressly averred that the insurance company was a foreign insurance company, and was engaged in business as such in the state of Mississippi; and, strangely enough, this plea was demurred to, which was enough of itself to have settled the case on the pleadings in favor of defendant. But, passing that by, as the court did, and coming to the facts of the case: Cowan, though the defendant, was introduced as a witness for the appellant (see pp. 29 *et seq.* of the record), and testified that the only thing his insurance broker in New York did for him was simply to put him into communication with the foreign company; that he himself (Cowan), by correspondence with the plaintiff company, made this contract, and that the proposition was made by the company in New York by correspondence, and was accepted by correspondence in Vicksburg, Miss. He says: "The policy issued by plaintiff was issued in New York and sent to us [that is, at Vicksburg]. It was our duty under this policy to issue a certificate every night and send it to the company. Every time

a risk was incurred we issued a certificate for it, and at the same time telegraphed, so that they could make entries and be covered all the time. The broker just put us in correspondence with Mr. Despard, and several letters passed between us, and finally we got this policy."

It is clear from this statement that the policy in the Cowan case was made directly between the company and Cowan; that the only thing that the broker of Cowan had to do with it was simply to put Mr. Cowan into correspondence with the foreign insurance company, after which he (Cowan himself) conducted the correspondence and concluded the contract, and the policy was delivered to Cowan at Vicksburg. We think this was a Mississippi contract, and not a New York contract, the policy being delivered in Mississippi and the proposition to be insured being accepted in Mississippi. It is obvious that the decision of the court in the Cowan case was correct, therefore, because it was a Mississippi contract, and it will be observed in the brief of the learned counsel for Cowan in that case that this very point— that it was a Mississippi contract because delivered to him and accepted by him in the said state—was stressed by them in that cause. It was, therefore, unfortunate, as it appears to us, that the court, in response to the suggestion of error, should have stated, as it did in effect, that the mere institution and conduct of the suit in this state to collect premiums was a transacting of insurance business in this state within the meaning of our statute. After the most careful and painstaking examination of the authorities, we are constrained to hold that the bringing of a suit in this state, such as this one, to collect assessments imposed by the judgment of the supreme court of a sister state, entitled under the provisions of the constitution of the United States to full faith and credit in this state, is not, in any proper legal sense, the transacting of any sort of insurance business in this state, within the meaning of our statutes. Before referring to the authorities on this subject it is proper to say that the contract

in this case is plainly not a Mississippi contract, and the demurrer to the replication to the special plea, of course, admits the fact set up in that replication—to wit, that this insurance company never transacted any business in the state of Mississippi.

What, now, do the authorities on this subject hold? In the case of *Allgeyer* v. *Louisiana,* 165 U. S., 591 (17 Sup. Ct., 427; 41 L. ed., 832), the doctrine is correctly laid down by Mr. Justice Peckham, for the court, that a citizen of a state has a perfect right to make a contract of insurance in a foreign state, the contract being made in that foreign state, and that such foreign insurance company has the right to enforce that contract in the state of the citizen's residence, under the protection of the fourteenth amendment to the constitution of the United States, said foreign insurance company not transacting business within the state of the citizen's residence. Says Justice Peckham, at p. 590 of 165 U. S. and at p. 432 of 17 Sup. Ct. (41 L. ed., 832) : "Has not a citizen of a state, under the provisions of the federal constitution above mentioned, a right to contract outside of the state for insurance on his property—a right of which state legislation cannot deprive him? . We are not alluding to acts done within the state, by an insurance company or ·its agents doing business therein, which are in violation of the state statutes. When we speak of the liberty to contract for insurance or to do an act to effectuate such a contract already existing, we refer to and have in mind the facts of this case, where the contract was made outside the state, and as such was a valid and proper contract. The act done within the limits of the state, under the circumstances of this case and for the purposes therein mentioned, we hold a proper act, one which the defendants were at liberty to perform, and which the. state legislature has no right to prevent, at least with reference to the federal constitution. To deprive a citizen of ·such a right as herein described, without due process of law, is illegal." In a perfectly identical case, where this same appellant was appellant (*Swing* v. *Hill et*

*al.*, 75 N. E., 658, decided by the supreme court of Indiana, October 27, 1905), it was held that "in a suit by a trustee for creditors of a foreign mutual fire-insurance company to recover a statutory liability against policyholders, it was no defense that the company had written defendants' policies, insuring property in Indiana, for the benefit of defendants, who were citizens of that state, without having complied with its insurance laws, the legislature having no authority to prohibit citizens from making contracts outside the state insuring property within its boundaries." The same doctrine is laid down in *Columbia Fire Ins. Co.* v. *Kinyon,* 37 N. J. Law, 33; in *Lumbermen's Mutual Ins. Co.* v. *Railway,* 149 Mo., 165 (50 S. W., 281); and in *Commonwealth* v. *Biddle,* 139 Pa., 605 (21 Atl., 134; 11 L. R. A., 561).

The very proposition inadvertently thrown out as dictum by Judge COOPER, in the Cowan case, *supra,* that a foreign company which does not transact business of insurance within this state, but which has issued a policy of fire insurance on property within this state, owned by a citizen resident here, cannot institute a suit against that citizen policyholder for premiums, because the institution of such a suit is the transacting of insurance business within this state, within the meaning of our statutes, is expressly declared unsound in the case of *Railway Co.* v. *Fire Ins. Co.,* 55 Ark., 174 (18 S. W. Rep., 46), where the court say: "Appellees, notwithstanding they are foreign corporations, have a right to litigate in the courts of this state, without complying with the constitutional and statutory provisions which regulate their right to do business here, because the institution and prosecution of a suit are not doing business within the meaning of such provisions." This identical doctrine was held in *Christian* v. *Mortgage Co.,* 89 Ala., 198 (7 South. Rep., 427). The court say: "The theory that foreign corporations cannot litigate in the courts of this state, unless they have complied with the constitutional and statutory provisions regulating their right to do

business here, is untenable.    The prosecution or defense of an action in the courts of this state is not the doing of business here, within the meaning of the requirements in question"—citing 2 Mor. Corp., sec. 662.    This opinion was delivered by the late Chief Justice McClellan, one of the greatest judges who ever adorned the bench in America.

Our conclusion, on this branch of the case, therefore, is that to give to our statutes prescribing the conditions under which foreign insurance companies are permitted to do business in this state, and prescribing the penalty for not complying with these statutes, the construction that a foreign insurance company— which has never transacted insurance business in this state, and which, therefore, has never paid the privilege tax nor filed the required certificate with the auditor, but which has, nevertheless, made a valid contract of insurance with a citizen of this state on property in this state, such contract being made in such foreign state, and not in Mississippi—may not institute and prosecute to conclusion a suit in the courts of this state to collect premiums against such citizen of Mississippi, would be to give our statutes a construction violative of the fourteenth amendment to the constitution of the United States with respect to due process of law, and that as a consequence the demurrer of the appellees to appellant's replication to the said special plea should have been overruled.

The appellees contend, in the second place, that the suit was barred by the statute of limitations, because the declaration shows that the corporation was adjudged insolvent in December, 1890.    But the complete answer to this is that the liability of the defendants was a proper contingent liability until it was made an absolute liability by the judgment of the supreme court of Ohio, above referred to.    Until that judgment turned the contingency into a certainty, the appellant had no right to sue. Therefore, the statute of limitations did not begin until such contingent liability had been made an absolute one by said judg-

ment.    It is held in *Langworthy* v. *Garding,* 74 Minn., 325 (77 N. W. Rep., 207), that "the statute of limitations does not begin to run in favor of the policyholder of an insolvent mutual insurance company until an assessment is made."    In *South Milwaukee Co.* v. *Murphy,* 112 Wis., 614 (88 N. W. Rep., 583; 58 L. R. A., 82), it is held that "a debt, so long as it is wholly unknown whether there will ever be an absolute liability to discharge it, is a mere contingent claim.    A subscription liability to pay for stock in a corporation is of that character."    In *Glenn, Trustee,* v. *Soule* (C. C.), 22 Fed. Rep., 417, it is held: "Prescription did not begin to run until the call was made, for until then the unpaid subscription was not exigible."    And the same doctrine is clearly laid down in *Boyd* v. *Mutual Fire Ass'n,* 116 Wis., 155 (90 N. W. Rep., 1086; 94 N. W. Rep., 171; 61 L. R. A., 918; 96 Am. St. Rep., 948); *Scovill* v. *Thayer,* 105 U. S., 143 (26 L. ed., 968); *Wardle* v. *Hudson,* 96 Mich., 432 (55 N. W. Rep., 992); *Great Western Tel. Co.* v. *Gray,* 122 Ill., 630 (14 N. E. Rep., 214); *Smith* v. *Bell,* 107 Pa., 352; *Lycoming Fire Ins. Co.* v. *Batcheller,* 62 Vt., 148 (19 Atl., 982); *Venderwerken* v. *Glenn* (Va.), 6 S. E. Rep., 806.    The defense of the statute of limitations is, therefore, unavailing. The Cowan case, 73 Miss., 321 (19 South. Rep., 298; 55 Am. St. Rep., 535), was decided correctly upon its facts, and is not interfered with by us in any wise.    We only point out certain dicta, unnecessary to the decision of the case, that the profession may not be further misled.

*The judgment is reversed, the demurrer to the replication to the special plea is overruled, and the cause remanded for proceedings in accordance with this opinion.*