AMERICAN FIRE INSURANCE COMPANY, A CORPORATION, *Plaintiff in Error*, v. KING LUMBER AND MANUFACTURING COMPANY, A CORPORATION, *Defendant in Error*.

Opinion Filed October 20, 1917.

Petition for Rehearing Denied November 5, 1917.

1. Neither the Legislature nor the Courts of Florida can extend the operation of the laws of the State beyond its borders.

2. Where there are contradictory, repugnant or inconsistent statements in a pleading, such statements will have the effect of neutralizing each other and such pleading will be held bad on demurrer.

3. Where fire insurance is procured on property in this State for a resident of Florida from a foreign insurance company by a broker who is a resident of this State, and who acts for the insurance company in obtaining information as to the subject insured and who delivers the policy to the insured in this State and collects the premium therefor and after taking out his commission remits the balance of the premium to the insurer, such broker under Sections 2765 and 2777, General Statutes of 1906, "shall be deemed to all intents and purposes an agent or representative of such company" in this State.

4. Residents of Florida may act in the dual capacity of insurance brokers for a person in procuring insurance upon his property situated within this State and also as agents or representatives of a foreign insurance company in issuing and delivering a policy of insurance upon such property.

5. Where the pleadings in an action upon two fire insurance policies show the property upon which such policies were issued was situated in Florida and that such policies were delivered to the plaintiff in Florida by L. & P., who

were not only acting as insurance brokers for the plaintiff in the transaction, but also as agents for the defendant insurance company, a foreign corporation, such policies will be held to be subject to applicable statutes and rules of law of this State.

6. Where residents of this State who act for a foreign insurance company in issuing a policy of insurance on property in this State, are under the provisions of Section 2765 of the General Statutes of 1906, held to be the statutory agents or representatives of such insurance company, they must also be held to be the agents or representatives of such insurance company "to all intents and purposes," as such Section 2765 expressly provides.

7. The acts of an agent performed within the scope of his real or apparent authority are binding upon his principal. The public have a right to rely upon the agent's apparent authority and are not bound to enquire as to his special powers, unless the circumstances are such as to put them upon inquiry.

8. Those who are under Sections 2765, 2777, General Statutes of 1906, the agents or representatives in this State of a foreign insurance company, may waive a warranty clause stamped upon a policy issued by such company and delivered through such agents or representatives, which warranty reads as follows:

"Warranted same gross rate terms and conditions as and to follow the American Central Insurance Company of St. Louis, Missouri, and that said Company has, throughout the whole time of this policy at least $5,000 on the identical subject matter and risk and in identically the same proportion on each separate part thereof; otherwise this policy shall be null and void;" and such waiver will be binding upon the foreign insurance company, where the agents or representatives act within the scope of their apparent authority.

9. While a demurrer interposed to a rejoinder reaches back to the replications and may be overruled if such replications are bad, yet such demurrer is properly sustained, if the replications are good and the rejoinder is bad.

10. Section 2765, General Statutes of 1906, does not limit the agency therein defined to the particular acts done by the agent or representative for the insurance company, but makes such person "to all intents and purposes an agent or representative of such company."

11. A demurrer does not admit conclusions of law not sustained by the facts alleged in the pleading.

Writ of error to Circuit Court for DeSoto County, F. A. Whitney, Judge.

Judgment reversed.

### STATEMENT.

We copy the following statement from the brief of the plaintiff in error, which the defendant in error says in its brief is "a fair and correct statement of the pleadings which made up the issues in the case that was tried before the court below and which is now before this court for its consideration:"

"The King Lumber and Manufacturing Company, hereinafter referred to for the sake of convenience as the Manufacturing Company, sued the American Fire Insurance Company, hereinafter referred to as the Insurance Company, upon two policies of insurance. The policies as well as the proofs of loss submitted were made parts of the declaration, from which it appears that there were twelve separate items insured, of which loss is claimed only on account of items numbered Two, Five, Six, Eight,

Eleven and Thirteen. It further appears that there was total concurrent insurance on the property to the amount of Forty-five Thousand, Seven Hundred and Fifty ($45,750.00) Dollars, and the policies contain the usual *pro rata* agreement in such cases.

"Item Five is a building the insurable value of which is fixed at Twenty-five Hundred ($2,500.00) Dollars. Items Two, Six and Eight relate to machinery, tools, boilers, etc. Items Eleven and Thirteen relate to manufactured product on hand.

"To the declaration the defendant filed two pleas as follows:

" '1.  That at the time of the execution and delivery of the policies sued on, and each of them, and at the time the said policies went into force, the defendant was a corporation organized and existing under the laws of the State of Pennsylvania, and was not engaged in the transaction of business in the State of Florida, and had not secured a permit to do business in the State of Florida as a fire insurance company, and had no agent or representative in the State of Florida, and the said policies were made, executed and delivered in the State of Pennsylvania, and secured in the State of Pennsylvania by the plaintiff through the firm of Lowry and Prince of Tampa, Florida, as brokers of the plaintiff, and the defendant required to be inserted in and stamped on the face of the said policies a provision in the following words, to-wit: "Warranted same gross rate, terms and conditions as and to follow the American Central Ins. Co., of St. Louis, Mo., and that said company has, throughout the whole time of this policy, at least $5,000 on the identical subject matter and risk and in identically the same proportion on each separate part thereof; otherwise this policy shall be null

and void," and prior to the time of the alleged loss in the said declaration mentioned, but without the knowledge of the defendant, the said American Central Ins. Co., of St. Louis, Mo., had cancelled its policies on the property insured, and at the time of the loss alleged did not carry $5,000 or any other amount on the identical subject matter and risk, and prior to the institution of suit the defendant requested of the plaintiff the date of the cancellation by the said American Central Ins. Co., of St. Louis, Mo., of its insurance on the premises, and offered to refund the unearned portion of the premiums on the policies sued on from the date of such cancellation, but the plaintiff failed and refused to furnish or give to the defendant the date of such cancellation, and the defendant hereby tenders and offers to pay to the plaintiff the amount of the unearned premiums from the date of such cancellation upon being advised of the date thereof, of which the defendant is now ignorant.'

" '2. And for a second and further plea the defendant says: that at the time of the execution and delivery of the policies sued on, and each of them, and at the time the said policies were expressed to go into force, and at the time of the plaintiff's loss, the entire property insured, including all of the personal property insured, was subject to and encumbered by the mortgage to W. G. Welles set forth in the plaintiff's proofs of loss, annexed to the said declaration, on which there was due a large sum of money, the existence of which mortgage was unknown to the defendant until the said proofs of loss were furnished it, whereby the said policies, according to the terms thereof, became null and void.'

"The plaintiff filed a demurrer to the second plea, which the court sustained, and replications to the first

plea, to which the court sustained a demurrer. Plaintiff then filed the following amended replications:

" 'First. That it denies that at the time the said policies went into force and were executed and delivered, that the defendant was not engaged in the transaction of business in the State of Florida, but states the fact to be that at that time, and as far back as 1908, the defendant was transacting business within the State of Florida, and was in fact transacting business with the plaintiff. That on April 14, 1908, the defendant, through Lowry & Prince, of Tampa, Florida, assumed a risk by a policy of fire insurance on part of the property of the plaintiff, described in the policies sued on herein, and that the said policy of April 14, 1908, so written by the said defendant was from time to time renewed and kept in force, and additional insurance was written on said property, and finally in 1912 policies sued on in this cause were written, and that defendant, before accepting the risk provided for by the first policy written in 1908, consulted with Lowry & Prince as to the nature of the risk assumed, and from time to time, from April 14, 1908, to the date of the fire, consulted and advised with Lowry & Prince as to the physical condition of your repliant's property, and as to the advisability of assuming a risk thereon, and relied upon the said Lowry & Prince for its information on this subject. And repliant further shows that the said Lowry & Prince caused the defendant to write the said first policy of 1908, and said Lowry & Prince caused and procured the defendant to renew said policy from time to time, and to finally write and issue policies here sued on, covering repliant's property, and that repliant from 1908 to the date of the policies here sued on, paid unto the said Lowry & Prince, premiums

charged by the said defendant for said policies, and said premiums were forwarded by the said Lowry & Prince, less their commission, which commission was allowed by the said defendant, to the said defendant, and that at the time the policies sued on herein were delivered to repliant, repliant paid the premium charged by the said defendant therefor, to Lowry & Prince, and the said Lowry & Prince forwarded the said premium to the said defendant.

" 'Therefore, repliant also denies that said defendant at the time of the execution and delivery of the policies sued on, had no agent or representative in the State of Florida, but states the fact to be that Lowry & Prince who procured and caused said policies to be written, who collected the premiums and forwarded the same to the defendant, were the agents of the defendant.

" '*Second.* For a further replication to said first plea, repliant says that it is true that the two fire insurance policies sued on in this cause contained the warranty set out in said plea. Repliant states the fact to be that Lowry & Prince, the agents of the defendant as aforesaid, when they delivered the policies so sued on to repliant, called repliant's attention to said warranty clause, and stated to repliant that said clause would not affect repliant, and should be disregarded by repliant and gave as their reasons why said warrant clause should be disregarded, that the repliant had at that time in the American Central Insurance Company of St. Louis, Mo., Six Thousand Five Hundred ($6,500.00) Dollars of insurance, covering the items insured by the policies of the defendant sued on herein.

" 'Repliant further says that it at that time was carrying a large amount of insurance, approximately Forty-

five Thousand ($45,000.00) Dollars in various companies, and that it did not keep up very closely with the amount of insurance that it had in any particular company, being careful only to keep the total amount approximately Forty-five Thousand Dollars, in reputable old line companies, and that it therefore relied upon the representation of the said Lowry & Prince, who stated that they had investigated the policies of repliant in the said American Central Insurance Company of St. Louis, Mo., and that repliant had Six Thousand Five Hundred Dollars of insurance, as aforesaid.

" 'Repliant further says that relying upon the representation of said Lowry & Prince, agents of the said defendant, and relying upon their instructions to disregard said warranty, repliant acepted said policies, and paid the said Lowry & Prince the premium therefor, charged by the said defendant.

" '*Third.* Replying further to said first plea repliant says: That sometime prior to July 25, 1912, Lowry & Prince, as agents of the defendant aforesaid, notified repliant that the American Central Insurance Company of St. Louis, Mo., was desirous of cancelling its policy No. 303149, in the sum of One Thousand Five Hundred ($1,500.00) Dollars and suggested to repliant that there be substituted for the last mentioned policy, a policy in a like sum in the Peoples National Fire Insurance Company of Philadelphia. This information coming from the said Lowry & Prince, the agents of the defendant, and this suggestion having been made by the agents of the defendant, repliant agreed to the cancellation of the said policy, and the substitution of a policy with the People's National Fire Insurance Company of Philadelphia.

" 'Repliant further says that sometime prior to October

27, 1912, the said Lowry & Prince, the agents as aforesaid of the said defendant, notified repliant that the American Central Insurance Company of St. Louis, Mo., was desirous of cancelling its policy No. 303192, in the sum of One Thousand Five Hundred ($1,500.00) Dollars and the said Lowry & Prince suggested that there be substituted for the said last mentioned policy, a policy in a like amount in the American Union of Philadelphia. Said information and said suggestions being given by the agents of said defendant as aforesaid, repliant agreed that said last mentioned policy might be cancelled, and a policy in the American Union of Philadelphia substituted therefor.

" 'Repliant further says that the said Lowry & Prince, agents of the defendant as aforesaid, assured repliant that the cancellation of the policies above mentioned was not a violation of the warranty set forth in said plea, provided a like amount of insurance was carried in some other old line insurance company.

" 'Repliant further says that as soon as said policies were cancelled, new policies were substituted in pursuance of said suggestion, in the companies above mentioned, and repliant therefore denies that said policies were cancelled without the knowledge of the defendant, but says that said policies were cancelled with the full knowledge and consent, and at the suggestion of Lowry & Prince, who were agents of said defendant as aforesaid, acting for it in the State of Florida, who, as such agents, had caused policies sued on to be issued, and who had collected the premiums paid by repliant for said policies sued on, and forwarded the same to the said defendant, and that said deefndant thereby waived said warranty clause, ratified and confirmed the cancellation of said

policies of insurance in the American Central Insurance Company of St. Louis.

" *'Fourth.* Further replying to said first plea, repliant denies that said policies of insurance so sued on, were delivered in the State of Pennsylvania, but states the fact to be that same were delivered by Lowry & Prince, as agents for said defendant, to repliant, within the State of Florida, and accepted by repliant within said State.'

"Defendant thereupon filed a rejoinder as follows:

" 'That under the public laws of the State of Pennsylvania, which are entitled to full faith and credit in the State of Florida, the defendant is authorized to write and issue, in the State of Pennsylvania, policies of insurance on property outside the State of Pennsylvania, and in April, 1908, at Philadelphia, in the State of Pennsylvania, Lowry & Prince of Tampa, Florida, with whom the defendant had no connection or relations, as brokers of the plaintiff, made application to the defendant requesting it to issue a policy insuring the property of the plaintiff situate.in Florida, which the defendant did, and thereafter, from time to time, on the written requests of the said Lowry & Prince, addressed to the defendant at Philadelphia, in the State of Pennsylvania, the defendant continued to write and issue policies of insurance on the plaintiff's property, including those sued upon, but all of said policies were written and executed by the defendant in the State of Pennsylvania, and thereupon delivered and sent by mail to the said Lowry & Prince at Tampa, Florida, as brokers of the plaintiff, and each contained a similar warranty clause as to the existence of concurrent insurance on the property with an approved designated company doing business in the State of Florida,

except that, from time to time, at the request of the said Lowry & Prince, the names of the companies were changed, as companies designated cancelled their risks on the property, and the name of the American Central Insurance Company of St. Louis, Missouri, was inserted in the contracts sued on at the special request of the said Lowry & Prince, stated by the said Lowry & Prince to the defendant to be made by them because they were agents for that company and would know of any cancellation by it, while some other company they did not represent might cancel without their knowledge; that the said Lowry & Prince were not agents of the defendant, or authorized by it to make contracts of insurance, to accept risks, to write, sign or issue policies, to collect, receive or receipt for moneys on its account, to waive any provisions in the contracts sued on, or to represent it in any manner, shape or form, but the plaintiff desired to secure, through them, insurance to the amount of $45,750.00, in accordance with a printed form prepared for the plaintiff of Lowry & Prince and annexed to the policies sued on, all of which they were unable to place with companies for which they were agents, and thereupon they transmitted to the defendant, at its main office in Philadelphia, the original and subsequent applications for insurance upon the plaintiff's property received by mail the policies for the plaintiff, and transmitted by mail for it the amount of the premiums, less the usual broker's commission; and the defendant denies by issuing the aforesaid policies for the plaintiff, or otherwise, it was engaged in the transaction of business in the State of Florida, and denies that the plaintiff paid to Lowry & Prince for the defendant, any premiums on the policies of insurance, written by the defendant, and denies that

Lowry & Prince were agents of the defendant, and denies that, prior to the furnishing of proofs of loss by the plaintiff, it had any notice or knowledge that the American Central Insurance Company of St. Louis, Missouri, had cancelled its policies on the property insured and did not carry $5,000 on the identical subject matter and risk, and denies that it advised or consulted with Lowry & Prince as to the advisability of the risk, or otherwise, except to the extent that it did request information from them as to the subject matter insured, and the companies carrying insurance thereon.'

"The court sustained a demurrer to the rejoinder and rendered final judgment thereon in favor of the plaintiff for the sum of Three Thousand, Two Hundred, Sixteen and 10/100 ($3,216.10) Dollars, from which this writ of error is prosecuted.

"The court in its judgment found that the provisions of Section 2765 of the General Statutes applied and made Lowry & Prince agents of the defendant, and that was the basis of its judgment.

"The assignment of errors is as follows:

" '1st.  The court by holding that Section 2765 of the General Statutes of Florida applied to the contracts of insurance sued on, which were made in the State of Pennsylvania, denied full faith and credit to the laws of the State of Pennsylvania, in violation of Section 1 of Article IV of the Constitution of the United States.

" '2nd.  The court by holding that Section 2765 of the General Statutes of Florida applied to the contracts of insurance sued on, which were made in the State of Pennsylvania, violated the provision contained in the Fourteenth Amendment to the Constitution of the United States which provides that "no State shall make or en-

force any law which shall abridge the privileges or immunities of citizens of the United States.".

"'3rd. The court by holding that Section 2765 of the General Statutes of Florida applied to the contracts of insurance sued on, which were made in the State of Pennsylvania, violated the provision contained in the Fourteenth Amendment to the Constitution of the United States which provides that "nor shall any State deprive any person of life, liberty or property, without due process of law."

"'4th. The court by holding that Section 2765 of the General Statutes of Florida applied to the contracts of insurance sued on, which were made in the State of Pennsylvania, violated the provision contained in the Fourteenth Amendment to the Constitution of the United States which provides that "no State shall deny to any person within its jurisdiction the equal protection of the laws."

"'5th. The court by holding that Section 2765 of the General Statutes of Florida applied to the contracts of insurance sued on, which were made in the State of Pennsylvania, denied to the defendant the benefit of Article VI of the Constitution of the United States which provides that "the Judges in every State shall be bound thereby anything in the Constitution or Laws of any State to the contrary notwithstanding."

"'6th. The court erred in sustaining the demurrer of the plaintiff to the rejoinder of the defendant on the ground that the said rejoinder was a complete answer to the plaintiff's replications.

"'7th. The court erred in sustaining the demurrer of the plaintiff to the rejoinder of the defendant on the ground that the replications of the plaintiff were bad,

and judgment should have been rendered against it on that ground.

" '8th.  The court erred in holding that the plaintiff could secure reformation of the policies sued on in a Court of Law.

" '9th.  The court erred in holding that Lowry & Prince had authority to abrogate the contracts represented by the policies sued on, and make new and different contracts with the plaintiff.

" '10th.  The court erred in holding that the plaintiff could recover upon different causes of action from those set up in its declaration.

" '11th.  The court erred in sustaining the demurrer of the plaintiff to the defendant's second plea.' "

This opinion by direction of the Court was prepared by Mr. Justice SHACKLEFORD, and approved by a majority of the Court, before his resignation.  After that event it was again considered and readopted.

*James F. Glen,* for Plaintiff in Error;

*Treadwell & Treadwell,* for Defendant in Error.

PER CURIAM.—We shall treat the first five assignments of error together, as they have been so discussed by the plaintiff in error, hereinafter referred to as the defendant, and the defendant in error, hereinafter referred to as the plaintiff, who concur in stating that all of such assignments "present questions arising under the Constitution of the United States."  The first point which they present for our determination is whether the contracts declared upon, evidenced by the two policies of insurance, are Florida contracts, as contended by the

plaintiff, or Pennsylvania contracts, as the defendant contends.

Section 2765 of the General Statutes of 1906, Compiled Laws of 1914, referred to in such asignments, reads as follows:

"Any person or firm in this State, who receives or receipts for any money on account of or for any contract of insurance made by him or them, or for such insurance company, association, firm or individual aforesaid, or who receives or receipts for money from other persons to be transmitted to any such company, association, firm or individual, aforesaid, for a policy of insurance, or any renewal thereof, although such policy of insurance is not signed by him or them, as agent or representative of such company, association, firm or individual, or who in any wise directly or indirectly makes or causes to be made, any contract of insurance for or on account of such insurance company, association, firm or individual, shall be deemed to all intents and purposes an agent or representative of such company, association, firm or individual."

This section originally formed Section 7 of Chapter 1863 of the Laws of Florida (Acts of 1872, p. 12) was brought forward as Section 2224 of the Revised Statutes of 1892, and was amended by Chapter 4380 of the Laws of Florida (Acts of 1895, p. 147). We also think that it is advisable to copy Section 2777 of the General Statutes of 1906, Compiled Laws of 1914, which originally formed Section 3 of Chapter 4677 of the Laws of Florida, (Acts of 1899, p. 34), and is as follows:

"Any person who solicits insurance and procures applications therefor shall be held to be agent of the party issuing a policy upon such application, anything in the application or policy to the contrary notwithstanding."

We are not sure that we fully comprehend the argument made by the learned counsel for the defendant in support of these assignments, but, as we understand it, he does not attack the constitutionality of Section 2765 or contend that it is not operative within the State of Florida or controlling as to Florida contracts. These two quoted statutes, Sections 2765 and 2777, make no discrimination between domestic and foreign insurance companies, as was attempted to be done by the statutes considered and discussed in State *ex rel.* Hoadley v. Board of Insurance Commissioners of Florida, 37 Fla. 564, 20 South. Rep. 772; 33 L. R. A. 288, but all insurance companies doing business within the State, whether incorporated or not, domestic or foreign, are placed upon the same footing and enjoy equal privileges and immunities. The defendant contends that the Circuit Court erroneously held that such Section 2765 applied to the contracts of insurance sued on, which, it is averred, were made in the State of Pennsylvania. It is undoubtedly true, as is argued by the defendant and which the plaintiff admits, that a State may not extend the operation of its statutes beyond its borders into the jurisdiction of other States. As was said by Mr. Chief Justice WHITE in New York Life Insurance Co. v. Head, 234 U. S. 149, text 161, 34 Sup. Ct. Rep. 879, which language is quoted and relied upon by the defendant, in discussing "the power of the State of Missouri to extend its authority into the State of New York:" "Such question, we think, admits of but one answer since it would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State and in the State of New York and there destroy freedom of contract without throwing down the constitutional barriers by which all

10—Vol. 74

the States are restricted within the orbits of their lawful authority and upon the preservation of which the Government under the Constitution depends. This is so obviously the necessary result of the Constitution that it has rarely been called in question and hence authorities directly dealing with it do not abound. The principle however lies at the foundation of the full faith and credit clause and the many rulings which have given effect to that clause. It is illustrated as regards the right to freedom of contract by the ruling in *Allgeyer v. Louisiana,* 165 U. S. 578, and it finds expression in the decisions of this court affirmatively establishing that a State may not consistently with the due process clause of the Fourteenth Amendment extend its authority beyond its legitimate jurisdiction either by way of the wrongful exertion of judicial power or the unwarranted exercise of the taxing power."

Neither the Legislature nor the courts of Florida could extend the operation of its statutes beyond its borders, and this is likewise true of Pennsylvania. The Legislature of Florida would seem to have made no such attempt. The question which we are called upon to answer is did the Circuit Court attempt to extend the operation of these two statutes into the State of Pennsylvania? The answer to be given to this question depends upon whether the contracts of insurance must be held to be Florida or Pennsylvania contracts. Conceding the truthfulness of the averment in the first plea of the defendant that such defendant corporation, organized and existing under the laws of Pennsylvania, "had not secured a permit to do business in the State of Florida," in accordance with the statutory requirements, if, as a matter of fact, such defendant did voluntarily

engage in the transaction of insurance business within the State of Florida, such defendant is as amenable to the provisions of Sections 2765 and 2777 as though it had been incorporated under the laws of Florida or had secured a permit to do business within such State as a fire insurance company. See Sections 4 and 5 of Chapter 5717 of the Laws of Florida, (Acts of 1907, p. 231), Sections 2682d and 2682e of Compiled Laws of 1914, and Ulmer v. First National Bank of St. Petersburg, 61 Fla. 460, 55 South. Rep. 405, wherein the former section was quoted and discussed, and which section was amended by Chapter 6876 of the Laws of Florida, (Acts of 1915, Vol. 1, p. 162.) It is true that such plea further avers that the defendant "had no agent or representative in the State of Florida, and the said policies were made, executed and delivered in the State of Pennsylvania, and secured in the State of Pennsylvania by the plaintiff through the firm of Lowry & Prince of Tampa, Florida, as brokers of the plaintiff." In the amended replications to this plea the following allegations are contained:

"*First.* That it denies that at the time said policies went in force and were executed and delivered, that the defendant was not engaged in the transaction of business in the State of Florida, but states the fact to be that at that time, and as far back as 1908, defendant was transacting business within the State of Florida, and was in fact transacting business with plaintiff.

"That on April 14, 1908, the defendant, through Lowry & Prince, of Tampa, Florida, assumed a risk by a policy of fire insurance on part of the property of the plaintiff, described in the policies sued on herein, and that the said policy of April 14, 1908, so written by said defendant was from time to time renewed and kept in force, and

additional insurance was written on said property, and finally in 1912 policies sued on in this cause were written, and that defendant, before accepting the risk provided for by the first policy written in 1908, consulted with the said Lowry & Prince as to the nature of the risk assumed, and from time to time, from April 14, 1908, to the date of the fire, consulted and advised with Lowry & Prince as to the physical condition of your repliant's property, and as to the advisability of assuming a risk thereon, and relied upon the said Lowry & Prince for its information on this subject.

"And repliant further shows that the said Lowry & Prince caused the defendant to write the said policy of 1908, and said Lowry & Prince caused and procured the defendant to renew said policy from time to time, and to finally write and issue policies here sued on, covering repliant's property, and that repliant from 1908 to the date of the policies here sued on, paid unto the said Lowry & Prince, premiums charged by the said defendant for said policies, and said premiums were forwarded by the said Lowry & Prince, less their commission, which commission was allowed by the said defendant, to the said defendant, and that at the time the policies sued on herein were delivered to repliant, repliant paid the premium charged by the said defendant therefor, to Lowry & Prince, and the said Lowry & Prince forwarded the said premium to the said defendant.

"Therefore, repliant also denies that said defendant at the time of the execution and delivery of the policies sued on, had no agent or representative in the State of Florida, but states the fact to be that Lowry & Prince, who procured and caused said policies to be written who collected the premiums and forwarded the same to the defendant, were the agents of the defendant."

In its rejoinder to the amended replications, which rejoinder and amended replications are copied in full in the prefatory statement to this opinion, the defendant admits the issuance of a policy by it on the property of the plaintiff situate in Florida in April, 1908, and that "the defendant continued to write and issue policies of insurance on the plaintiff's property, including those sued upon," upon the written request of Lowry & Prince, as brokers of the plaintiff, but avers that "with whom the defendant had no connection or relations." The rejoinder further avers that Lowry & Prince "transmitted to the defendant, at its main office in Philadelphia, the original and subsequent applications for insurance upon the plaintiff's property, received by mail the policies for the plaintiff, and transmitted by mail for it the amount of the premiums, less the usual broker's commission." The defendant then proceeds to add the following denial: "and the defendant denies that by issuing the aforesaid policies for the plaintiff, or otherwise, it was engaged in the transaction of business in the State of Florida, and denies that the plaintiff paid to Lowry & Prince, for the defendant, any premiums on the policies of insurance, written by the defendant, and denies that Lowry & Prince were agents of the defendant," and concludes its rejoinder as follows: "And denies that it advised or consulted with Lowry & Prince as to the advisability of the risk, or otherwise, except to the extent that it did request information from them as to the subject-matter insured, and the companies carrying insurance thereon."

We deem it proper to call attention to the fact that the defendant begins its rejoinder with the statement, upon which it strongly relies, "That under the public laws of the State of Pennsylvania, which are entitled to full faith and credit in the State of Florida, the defend-

ant is authorized to write and issue, in the State of Pennsylvania, policies of insurance on property outside the State of Pennsylvania."

The rejoinder was filed to all of the amended replications and the demurrer interposed by the plaintiff was addressed to the entire rejoinder, which demurrer was sustained as an entirety. See Griffing Bros. Co. v. Winfield, 53 Fla. 589, 43 South. Rep. 687, and authorities there cited. For a proper understanding of these pleadings reference should be had to them in the prefatory statement. We have given extracts from them here merely as a matter of convenience and to render this opinion the more readily intelligible.

We have repeatedly held that every pleading is to be most strictly construed against the pleader thereof, that it is the first essential of good pleading that it be characterized by certainty, which quality is especially requisite in replications and rejoinders. See Hillsborough Grocery Co. v. Leman, 62 Fla. 208, 56 South. Rep. 684, wherein we discussed what should characterize a rejoinder which admits the correctness of certain statements in the replication but seeks to avoid the same. We have also held that, where a pleading has on its face two intendments, it must be construed most strictly against the party who pleads it. Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761. We have also held, where there are inconsistent or contradictory allegations or averments in a pleading, that such pleading would be tested by the weaker, rather than by the stronger, allegations or averments. We have likewise held that, where there are contradictory, repugnant or inconsistent statements in a pleading, such statements would have the effect of neutralizing each other and that such pleading would be held bad on demurrer.

See Hoopes Bros. v. Crane, 56 Fla. 395, 47 South. Rep. 992, and State v. Seaboard Air Line Ry., 56 Fla. 670, 47 South. Rep. 986. We have further held that a demurrer interposed to a pleading admits the truth of all such matters of fact as are well and sufficiently pleaded, but allegations or averments of mere conclusions of law are not admitted by a demurrer, for the law is to be ascertained by the court. Brown v. Avery, 63 Fla. 355, 58 South. Rep. 34, Ann. Cas. 1914A 90.

Although Lowry & Prince were acting as brokers for the plaintiff in procuring insurance upon its property, it might also be true that, by virtue of what was actually done by them and the defendant in such transaction, the law would also hold them to be the agents of the defendant. That Lowry & Prince could act in the dual capacity of insurance brokers for the plaintiff in procuring insurance upon its property and also as agents for the defendant insurance company there can be no question. See Hooper v. State of California, 155 U. S. 648, 15 Sup. Ct. Rep. 207, in which the opinion was rendered by Mr. Justice WHITE, and from which we take the following excerpt: "The admission that the insurance was procured for the resident from a foreign company, which had no agent in the State, does not exclude the possibility of its having been procured within the State. If it were obtained for the resident by a broker who was himself a resident, this would be a procuring within the State and be covered by the statute.

"The business of a broker is to serve as a connecting link between the party who is to be insured and the party who is to do the insuring—to bring about 'the meeting of their minds,' which is necessary to the consummation of the contract. In the discharge of his business he is the representative of both parties to a certain

extent. *How* v. *Union Mut. Life Ins. Co.,* 80 N. Y. 32; *Monitor Mut. Ins. Co.* v. *Young,* 111 Mass. 537; *Hartford Ins. Co.* v. *Reynolds,* 36 Michigan, 502.

"Domat thus defines his functions: 'The engagement of a broker is like to that of a proxy, a factor, or other agent; but, with this difference, that the broker, being employed by persons who having opposite interests to manage, he is, as it were, agent both for the one and the other to negotiate the commerce and affair in which he concerns himself. Thus, his engagement is twofold, and consists in being faithful to all the parties in the execution of what everyone of them entrusts him with. And his power is not to treat, but to explain the intentions of both parties, and to negotiate in such a manner as to put those who employ him in a condition to treat together personally.' 1 Domat, bk. 1, tit. 17, Sec. 1, Strahan's trans.

"Story says this statement of the functions of a broker is 'a full and exact description according to the sense of our law.' Story's Agency, 31, note 3, 9th ed.

"If the contention of the plaintiff in error were admitted the established authority of the State to prevent a foreign corporation from carrying on business within its limits, either absolutely or except upon certain conditions, would be destroyed. It would be only necessary for such a corporation to have an understanding with a resident that in the effecting of contracts between itself and other residents of the State, he should be considered the agent of the insured persons, and not of the company. This would make the exercise of a substantial and valuable power by a state government depend not on the actual facts of the transactions over which it lawfully seeks to extend its control, but upon the disposition of a corporation to resort to a mere sub-

terfuge in order to evade obligations properly imposed upon it. Public policy forbids a construction of the law which leads to such a result, unless logically unavoidable.

"The facts found here enforce the correctness of these views, and illustrate the evil which the statute was doubtless intended to prevent.

"Johnson & Higgins were average adjusters and brokers in New York City. Hooper, the plaintiff, as their agent, had a place of business in San Francisco. As such broker he applied for the insurance to his principals in New York City; the policy came to San Francisco for delivery, and the premium was there paid."

Also see John R. Davis Lumber Co. v. Hartford Fire Insurance Co., 95 Wis. 226, 70 N. W. Rep. 84, 37 L. R. A. 131, wherein it was held as follows: "Although Sec. 1977, R. S., declares that whoever solicits or procures insurance from an insurance company on behalf of another, or makes any contract for insurance, or collects any premium, etc., shall be held to be an agent of such insurance company 'to all intents and purposes,' it cannot be construed to pervent an insurance broker employed to procure insurance for another from being the agent of the assured at the same time in procuring the policy; and the same rule applies as in other agencies, that the principal is bound by the acts and representations of the agent within the scope of his authority. Where the two relations conflict, the statute must prevail."

We call especial attention to the similarity of the Wisconsin statute, quoted in the opinion rendered by Mr. Justice MARSHALL in the cited case, to our own statute, Section 2765 of the General Statutes of 1906, which we have copied above. Also see Shomar v. Hekla Fire Insurance Co., 50 Wis. 575, 7 N. W. Rep. 544, wherein was discussed the origin, history and object of the Wisconsin

statute, which is cited and quoted from with approval in John R. Davis Lumber Co. v. Hartford Fire Insurance Co., *supra*. We find from the strong opinion rendered by Mr. Chief Justice Cole in Schomer v. Hekla Fire Insurance Co., *supra*, wherein the Wisconsin statute would seem to have been construed for the first time, that Section 1977 of the Revised Statutes of Wisconsin, therein being considered, was a combination or union of several statutes, which are given. As was said in the opinion: "It seems to be designed in the clearest manner to make the company responsible to the public for the acts of one whom it permits to solicit insurance on its behalf, or who receives applications for insurance, makes, or aids in making, contracts of insurance, or transacts the business, whether such person has in fact authority to act for it or not. The law imposes upon the company the duty of seeing to it that none but its regular authorized agents shall do its business or deal with the public. It is certainly not difficult for an insurance company to say to its local agents that they alone must transact its business; that they must in all cases deal directly with the insured in making insurance contracts, and not allow the interference of any stranger in its business, for whose acts it does not wish to be held responsible. That this is the plain object and intent of the statute we have no doubt. And, where the insurance company issues a policy in a case where a person has assumed the right to act for and represent it in making the contract, it must abide by the consequences and meet the liability which the statute imposes upon it." As had been previously stated therein: "Now it is difficult to imagine what object this provision was intended to accomplish, or what purpose subserve, if it has not the effect, under the circumstances, to make Lawson the agent of the defendant

in the transaction. His acts, certainly, bring him within both the letter and spirit of the law. He was the only real actor for the defendant in making the contract; *pro hac vice* he assumed to represent, and did represent, the company in the matter; he received the application, settled with the insured the rate and terms of insurance, delivered to them the policy, collected the premiums, and shared in the commission. In fact, he did everything that was done on behalf of the company, except the mere act of countersigning the policy. He was the only person the plaintiffs dealt with; they knew no other agent in effecting the insurance they were totally ignorant of his relation to the defendant, or of his want of authority to represent and act for it. It is idle to contend that he did not in any manner aid or assist in making the contract for the company, when he was, in fact, the only person who did treat with the plaintiffs on its behalf."

We would also refer to State v. United States Mutual Accident Association, 67 Wis. 624, 31 N. W. Rep. 229; Stanhilber v. Mutual Mill Insurance Co., 76 Wis. 285, 45 N. W. Rep. 221; Stehlock v. Milwaukee Mechanics' Insurance Co., 87 Wis. 322, 58 N. W. Rep. 379; Rose v. Kimberly & Clark Co., 89 Wis. 545, 62 N. W. Rep. 526, 27 L. R. A. 556; Wicks Bros. v. Scottish Union & National Insurance Co., 107 Wis. 606, 83 N. W. Rep. 781; Wisconsin Central R. Co. v. Phoenix Insurance Co., 123 Wis. 313, 101 N. W. Rep. 703; Welch v. Fire Association of Philadelphia, 120 Wis. 456, 98 N. W. Rep. 227; Presbyterian Ministers' Fund v. Thomas, 126 Wis. 281, 105 N. W. Rep. 801.

In Queen Insurance Co. v. Patterson Drug Co., 73 Fla. 665, 74 South. Rep. 807, we had occasion to quote and discuss to some extent Sections 2765 and 2777 of the General Statutes of 1906, though we were not there dealing

with the precise questions which confront us in the instant case. We copied therein the Texas statute and pointed out that it was of similar effect to our statute. We also quoted with approval an excerpt from the opinion rendered in German Insurance Co. v. Everett,— Tex. Civ. App.—, 36 S. W. Rep. 125, to which we would again refer. Also see German Insurance Co. v. Everett, 18 Tex. Civ. App. 514, 46 S. W. Rep. 95. The following cases will also be found instructive upon the points which we are now considering: Fred Miller Brewing Co. v. Council Bluffs Insurance Co., 95 Iowa 31, 63 N. W. Rep. 565; St. Paul Fire & Marine Insurance Co. v. Sharer, 76 Iowa, 282, 41 N. W. Rep. 19; Continental Insurance Co. v. Ruckman, 127 Ill., 364, 20 N. E. Rep. 77, 11 Am. St. Rep. 121; Pierce v. People, 106 Ill. 11, 46 Am. Rep. 683; Phoenix Insurance Co. v. Levy, (Tex. Civ. App.) 33 S. W. Rep. 992; Pollock v. German Fire Insurance Co., 127 Mich. 460, 86 N. W. Rep. 1017; New York Life Insurance Co. v. Russell, 77 Fed. Rep. 94, 23 C. C. A. 43; Bank of Brunson v. Aetna Insurance Co., 203 Fed. Rep. 810; Continental Life Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. Rep. 87; Orient Insurance Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. Rep. 281; New York Life Insurance Co. v. Cravens, 178 U. S. 389, 20 Sup. Ct. Rep. 962. Also see note on page 124 of 107 Amer. St. Rep.

We have examined all of the authorities which have been cited to us, as well as others, devoting especial attention to those cited by the defendant. The cases bearing upon the questions which we are now considering are so numerous and the results announced by the different courts are so varied that we cannot undertake to cite or discuss them all. It must be conceded that the authorities are more or less conflicting and that it would be impossible to reconcile or harmonize them. This is due

somewhat, but not entirely, to different statutes and variant facts and circumstances. All that we attempt to do is to select from the great mass such authorities as seem to us to bear most directly upon the precise points involved in the instant case and to contain what we conceive to be correct statements of the principles of law which should control. The defendant strongly relies upon Allgeyer v. State of Louisiana, 165 U. S. 578, 17 Sup. Ct. Rep. 427; Old Wayne Mutual Life Insurance Co., v. McDonough, 204 U. S. 8, 27 Sup. Ct. Rep. 236, reversing the judgment rendered by the Supreme Court of Indiana in 164 Ind. 321, 73 N. E. Rep. 703; New York Life Insurance Co. v. Head, 234 U. S. 149, 34 Sup. Ct. Rep. 879; Simon v. Southern Ry. Co., 236 U. S.. 115, 35 Sup. Ct. Rep. 255. The defendant states that nearly all the cases cited and relied upon by the plaintiff, some of which we have cited above, were decided prior to Allgeyer v. Louisiana, *supra,* which was decided in March, 1897, and, therefore, "are necessarily overruled by that decision, so far as there is any conflict, and also by Old Wayne Mutual Life Insurance Co., *supra,* so far as they encounter it." Some of the cases which we have cited above were decided prior to Allgeyer v. Louisiana, *supra,* and some subsequently thereto, but that fact would not seem to be of as much moment as the defendant contends. We would point out as instances that Wicks Bros. v. Scottish Union & National Insurance 'Co., *supra;* Welch v. Fire Association of Philadelphia, *supra;* Wisconsin Central Ry. Co. v. Phoenix Insurance Co., *supra;* Presbyterian Ministers' Fund v. Thomas, *supra,* were all decided by the Wisconsin court subsequent to the decision rendered in Allgeyer v. Louisiana, *supra,* and, as the prior decisions of the Wisconsin court, which we have cited above, were cited and approved in these subsequent

decisions, evidently that court did not consider that such prior decisions had been overruled by Allgeyer v. Louisiana, *supra*. We would refer especially to Welch Bros., v. Fire Association of Philadelphia, *supra*, in which the opinion was written by Mr. Justice MARSHALL, who also wrote the opinion in John R. Davis Lumber Co. v. Hartford Fire Insurance Co., which we have commended above, and in which both the opinions rendered in John R. Davis Lumber Co. v. Hartford Fire Insurance Co., *supra*, and Schomer v. Hekla Fire Insurance Co., *supra*, are cited and approved. It is true that no Federal questions were discussed or Federal cases cited therein. The defendant also points out that, although the case of Swing v. Munson, 191 Pa. 582, 43 Atl. Rep. 342, 58 L. R. A. 223, cited by the plaintiff, would seem to sustain its contention, the same plaintiff, Swing, "sued other parties in other states with the opposite result," and cites Swing v. Hill, 165 Ind. 411, 75 N. E. Rep. 658; and Swing v. B. E. Brister Co., 87 Miss. 516, 40 South. Rep. 146, and also cites Stone v. Old Colony St. Ry. Co., 212 Mass. 459, 99 N. E. Rep. 218.

We cannot go into any extended discussion or analysis of all these cases. In the case of Allgeyer v. Louisiana, *supra*, the statute of Louisiana presented for construction, the nature of the action, the pleadings, facts and circumstances all differ so widely from those in the instant case that the principles announced in the opinion rendered in the cited case would seem to have but little applicability to the instant case. This is likewise true of the other decisions of the United States Supreme Court cited by the defendant. As was said in Allgeyer v. Louisiana, *supra*, text, page 590: "Has not a citizen of a State, under the provisions of the Federal Constitution above mentioned, a right to contract outside of the State

for insurance on his property—a right of which state legislation cannot deprive him? We are not alluding to acts done within the State by an insurance company or its agents doing business therein, which are in violation of the State statutes. Such acts come within the principle of the *Hooper case* (*supra*), and would be controlled by it. When we speak of the liberty to contract for insurance or to do an act to effectuate such a contract already existing, we refer to and have in mind the fact of this case, where the contract was made outside the State, and as such was a valid and proper contract. The act done within the limits of the State under the circumstances of this case and for the purpose therein mentioned, we hold a proper act, one which the defendants were at liberty to perform and which the State legislature had no right to prevent, at least with reference to the Federal Constitution. To deprive the citizen of such a right as herein described without due process of law is illegal. Such a statute as this in question is not due process of law, because it prohibits an act which under the Federal Constitution the defendants had a right to perform. This does not interfere in any way with the acknowledged right of the State to enact such legislation in the legitimate exercise of its police or other powers as to it may seem proper. In the exercise of such right, however, care must be taken not to infringe upon those other rights of the citizen which are protected by the Federal Constitution."

It will be observed on reading the opinion that the court was careful to differentiate that case from Hooper v. California, 155 U. S. 648, 15 Sup. Ct. Rep. 207, from which we have already quoted above. We would also call attention to the following holding in Allgeyer v. Louisiana, *supra*: "*Hooper* v. *California*, 155 U. S. 648, distin-

guished from this case; and it is further held that, by the decision in this case it is not intended to throw any doubt upon, or in the least to shake the authority of that case.

"When or how far the police power of the State may be legitimately exercised with regard to such subjects must be left for determination in each case as it arises."

We think that Hooper v. California, *supra,* is far more nearly in point to the instant case than the other Federal cases cited and relied upon by the defendant. We shall not stop to comment upon Swing v. Brewster, 87 Miss. 516, 40 South. Rep. 146; Swing v. Hill, 165 Ind. 411, 75 N. E. Rep. 658; Stone v. Old Colony St. Ry. Co., 212 Mass. 459, 99 N. E. Rep. 218, also cited and relied upon by the defendant, in all of which Allgeyer v. Louisiana, *supra,* is cited. We content ourselves with stating that we have carefully read the same and do not find they throw much light upon the points which we are now considering. We prefer to rest the conclusion which we have reached upon the principles announced in Hooper v. California, *supra,* and the Wisconsin and other cases which we have cited above.

As we read the pleadings in the instant case and the respective orders made thereon, which form the basis for the assignments now under consideration, we fail to find where any such orders had the effect of giving extra-territorial effect to either Section 2765 or 2777 of the General Statutes of 1906, or extending their operation into the State of Pennsylvania, as the defendant contends. The pleadings show that the property upon which the two policies were issued was situated in Florida and that such policies were delivered to the plaintiff in Florida by Lowry & Prince, who were not only acting as insurance brokers for the plaintiff in the transaction, but also as agents for the defendant. In other words, we are

of the opinion, and so hold, that the two policies of insurance were and are Florida contracts and that by reason of the transactions had by the defendant with Lowry & Prince and what was done by and through them, the defendant paying them "the usual broker's commission" for effecting such insurance, the defendant was doing business in Florida, and that Lowry & Prince were the defendant's agents, within the provisions of Sections 2765 and 2777, as was held by the Circuit Court. This conclusion is confirmed we think by the admission in the concluding paragraph of the rejoinder wherein it is alleged that the defendant "did request information from them (meaning Lowry & Prince), as to the subject-matter insured," because it is a matter of common knowledge that fire insurance companies, before accepting applications for insurance, have such inspections made as are necessary to inform themselves of the character and condition of the property to be covered by the insurance applied for and when the defendant "did request information" from Lowry & Prince, "as to the subject-matter insured" it constituted them its agents for the purpose of obtaining information that would influence its attitude and action in reference to the subject about which it sought information, and it cannot now be heard to deny this relationship and thereby escape the consequent liability. As we view it, the laws of the State of Pennsylvania had nothing to do with the transaction, were not applicable or controlling and were not before the Circuit Court for consideration. We are further of the opinion that, if Lowry & Prince were such statutory agents of the defendant, they must be held to be agents or representatives of the defendant "to all intents and purposes," as Section 2765 expressly provides, that is general, and not special agents. It is true that in Mutual Life Insurance

Co. v. Hilton-Green, 241 U. S. 613, 36 Sup. Ct. Rep. 676, which is cited to us by the defendant, it was held: "While Sec. 2765, Florida Statutes, undertakes to designate as agents of insurance companies certain persons, in fact, acting for such companies in some particulars, it does not fix the scope of their authority as between the company and third persons, and does not raise special agents with limited authority into general ones with unlimited power." We have carefully read the opinion rendered in this case, as well as the two opinions rendered in the same case by the Circuit Court of Appeals for the Fifth Circuit, reported in 202 Fed. Rep. 113, and 211 Fed. Rep. 31, but shall not undertake to analyze or discuss them. For a proper understanding of the opinion rendered by the United States Supreme Court it is necessary to have in mind all the facts and circumstances as they were developed in that case. Suffice it to say that they are very different from those in the instant case. Here no rights of third persons are involved and we are not called upon to fix the scope of the authority, "as between the company and third persons," which would seem to have been a controlling feature in the cited case. Be that as it may, the duty devolves upon us to construe our own statutes. As was said in Osborne v. State of Florida, 164 U. S. 650, text 654, 17 Sup. Ct. Rep. 214, "The particular construction to be given to this State statute is a question for the state court to deal with, and in such a case as this we follow the construction given by the state court to the statutes of its own State. *Leffingwell* v. *Warren,* 2 Black, 599; *People* v. *Weaver,* 100 U. S. 539, 541; *Noble* v. *Mitchell,* 164 U. S. 367, 372, and cases there cited."

We would call especial attention to Noble v. Mitchell, 164 U. S. 367, 17 Sup. Ct. Rep. 110, referred to above for

the reason that in that case, as is stated therein, the Supreme Court of Alabama was called upon to construe certain statutes regulating the transaction of business by insurance companies within that State which were quite similar to our statutes which we are now considering and, as was stated in the opinion in the cited case, which was rendered by Mr. Justice WHITE: "The highest court of the State having affirmed the validity of the state statute and enforced its provisions against the plaintiff in error, despite his objection duly made that such statute was repugnant to the Constitution of the United States, a writ of error was allowed, and the cause is here for review." The opinion then proceeds to quote the following language from Hooper v. California, 155 U. S. 648, text 655, from which we gave certain excerpts above: "The State of California has the power to exclude foreign insurance companies altogether from her territory, whether they were formed for the purpose of doing a fire or a marine business. She has the power, if she allows any such companies to enter her confines, to determine the conditions on which the entry shall be made. And, as a necessary consequence of her possession of these powers, she has the right to enforce any conditions imposed by her laws as preliminary to the transaction of business within her confines by a foreign corporation, whether the business is to be carried on through officers or through ordinary agents of the company, and she has also the further right to prohibit a citizen from contracting within her jurisdiction with any foreign company which has not acquired the privilege of engaging in business therein, either in his own behalf or through an agent empowered to that end. The power to exclude embraces the power to regulate, to enact and enforce all legislation in regard to things done within the territory

of the State which may be directly or incidentally requisite in order to render the enforcement of the conceded power efficacious to the fullest extent, subject always, of course, to the paramount authority of the Constitution of the United States."

After quoting this language from his former opinion, Mr. Justice WHITE goes on to say: "It inevitably results from this ruling that the State of Alabama, in virtue of the power possessed by it of excluding foreign fire insurance corporations from its jurisdiction, could lawfully punish or regulate, by the imposition of civil liability, or otherwise, the doing of acts within the territory of the State calculated to neutralize and make ineffective the statute which prescribed conditions upon which alone the right existed in a foreign insurance corporation to do business within the State." For the opinion rendered by the Alabama Supreme Court see 100 Ala. 519, 14 South. Rep. 581, 25 L. R. A. 238.

As we have already said by our two statutes which we are considering, all insurance companies doing business within the State, whether incorporated or not, domestic or foreign, are placed upon the same footing and enjoy equal privileges and immunities. This being true, the courts should not make a discrimination in favor of a foreign insurance corporation which is attempting to do business in Florida without complying with the statutory requirements. We would refer again to Queen Insurance Co. v. Patterson Drug Co., 73 Fla. 665, 74 South. Rep. 807, and call attention to what we have so recently said both on the subject of agents of insurance companies under our statutes and of the waiver by such agents of provisions in insurance policies. Also see the authorities there cited, especially Tillis v. Liverpool, L. & G. Insurance Co., 46 Fla. 268, 35 South. Rep. 171, 110 Am. St.

Rep. 89, and Eagle Fire Co. v. Lewallen, 56 Fla. 246, 47 South. Rep. 947. Still other decisions of this court, as well as of courts of other jurisdictions, will be found cited in these opinions. We would also refer to Aetna Insurance Co. v. Holmes, 59 Fla. 116, 52 South. Rep. 801; Hartford Fire Ins. Co. v. Brown, 60 Fla., 83, 53 South. Rep. 838; Southern States Fire Ins. Co. v. Vann, 69 Fla. 549, 68 South. Rep. 647, L. R. A. 1916B 1189; Palantine Insurance Co. v. Whitfield, 73 Fla. 716, 74 South. Rep. 869. We would also refer again to Schomer v. Hekla Fire Ins. Co., 50 Wis. 575, 7 N. W. Rep. 544, especially the extract therefrom which we copied above. Reading the replications and the rejoinder thereto, which are copied in the prefatory statement, in the light of the authorities which we have cited, we are of the opinion not only that Lowry & Prince, under our statutes, were the agents of the defendant, but that the warranty clause therein as to the existence of concurrent insurance on the property, must be held to have been waived by the defendant by reason of the statements and acts of Lowry & Prince, its agents. It necessarily follows from what we have said that we are of the opinion that the first five assignments, presenting questions arising under the Constitution of the United States, have not been sustained.

We next take up the sixth and seventh assignments which are argued together by the counsel for the defendant, being predicated upon the sustaining of the plaintiff's demurrer to the defendant's rejoinder, as stated in the brief of the defendant's counsel, "the former being grounded on the fact that it was a good answer to the replications, the latter on the fact that the replications were bad." In treating the first five assignments we have already held in effect that we were of the opinion that the rejoinder, which was filed to all the amended

replications, was not a good answer to the same, and·
we might well content ourselves with what we have
there said. As is said by the counsel for the defendant
in his brief, "It is obvious that this rejoinder was a com-
plete answer to the replications unless as a matter of law
Lowry & Prince were agents of the defendant, and even
if they were defendant's agents it was still good unless
their agency extended continuously for every purpose,
after the delivery of the policies, even to the extent of
making new contracts." We have squarely held that as
a matter of law Lowry & Prince were the agents of the
defendant "to all intents and purposes," as the statute
expressly provides, and that the acts of such agents in
connection with the cancellation of the warranty provis-
ion stamped upon the policies as to the existence of con-
current insurance upon the property and the statements
made by such agents to the plaintiff were within the
scope of the real or apparent authority of such agents,
and, therefore, were binding upon their principal, the de-
fendant. As we held in Eagle Fire Insurance Co. v.
Lewallen, 56 Fla. 246, 47 South. Rep. 947, which princi-
ple we had announced in prior and have followed in sub-
sequent opinions: "The acts of an agent performed
within the scope of his real or apparent authority are
binding upon his principal. The public have a right to
rely upon an agent's apparent authority and are not
bound to enquire as to his special powers, unless the
circumstances are such as to put them upon inquiry."
Also see Tillis v. London & Liverpool & Globe Insurance
Co., 46 Fla. 268, 35 South. Rep. 171, 110 Am. St. Rep. 89;
Hartford Fire Insurance Co. v. Redding, 47 Fla. 228,
37 South. Rep. 62, 67 L. R. A. 518, 110 Am. St. Rep. 118;
Southern States Fire Insurance Co. v. Vann, 69 Fla. 549,
68 South. Rep. 647, L. R. A. 1916B 1189; Beekman v.

Sontag Investment Co., 67 Fla. 293, 64 South. Rep. 948. The counsel of the defendant in his brief virtually concedes that, under our holding in Eagle Fire Insurance Co. v. Lewallen, *supra*, an insurance agent, acting within the scope of his real or apparent authority, would have the power or authority to waive a provision in the policy which was a condition subsequent, but earnestly contends that the warranty clause endorsed upon the policies declared on was not a condition subsequent, but a condition precedent, which could not be waived by Lowry & Prince. For convenient reference we copy here such warranty clause, stamped upon each of the policies, as the rejoinder states, by the defendant, "at the special request of the said Lowry & Prince," which clause is as follows: "Warranted same gross rate terms and conditions as and to follow the American Central Ins. Co. of St. Louis, Mo., and that said company has, throughout the whole time of this policy at least $5,000 on the identical subject matter and risk and in identically the same proportion on each separate part thereof; otherwise this policy shall be null and void."

We do not construe this clause as a condition precedent. Under our holding in Tillis v. Liverpool & London & Globe Co., *supra*, it would seem to be in the nature of a condition subsequent. Also see 2 Cooley's Briefs on the Law of Insurance, 1480, and authorities there cited. Strictly speaking, such warranty clause may be neither a condition precedent or condition subsequent. See 2 Cooley's Briefs on the Law of Insurance, 1121, and authorities there cited, especially Redman v. Aetna Insurance Co., 49 Wis. 431, 4 N. W. Rep. 591. We shall not pause to discuss this point, as it is a matter of no

especial moment, so far as the proper disposition of the instant case is concerned. See 19 Cyc. 777, where the law would seem to be correctly stated as follows: "When an insurance contract is conditioned to become void in case there be a breach of a condition precedent or subsequent, the true meaning is not that the instrument is upon a breach thenceforth a nullity and has no legal existence, but only that upon the violation of the covenants by the insured the insurer shall cease to be bound by his covenants. Inasmuch therefore as such conditions are inserted for the benefit of the insurer they may all be waived by him, except when the insured by the act loses his insurable interest. Even a stipulation that the conditions of a policy cannot be waived, or if waived at all only in a certain manner, may itself be waived." Also see the authorities from the different jurisdiction cited in the notes to support the text. The following later authorities will also be found instructive: Black v. Grain Shippers Mutual Fire Insurance Association, 171 Iowa 309, 152 N. W. Rep. 7; Liquid Carbonic Acid Manufacturing Co. v. Phœnix Fire Insurance Co., 126 Iowa 225, 101 N. W. Rep. 749; Plunkett v. Piedmont Mutual Insurance Co., 80 S. C. 407, 61 S. E. Rep. 893; Gold Issue Mining & Milling Co. v. Pennsylvania Fire Insurance Co., 267 Mo. 524, 184 S. W. Rep. 999. As to the further contention of the defendant that the replications set out a different contract from those alleged in the declaration we cannot agree. We do not consider the replications as making what is known as a departure in pleading, therefore there is no occasion for us to discuss that doctrine. As to what constitutes a departure in pleading see Tillis v. London & Liverpool & Globe Insurance Co., *supra,* and Eagle Fire Insurance Co. v. Lewallen, *supra.*

The defendant further contends in support of these assignments that the replications were bad, therefore the demurrer to the rejoinder reaches back to them and should have been overruled. Undoubtedly it is true, as we have frequently held, that "In an action at law wherein a demurrer is interposed to replications to a plea, all previous pleadings are thereby opened up, and judgment should be rendered thereon against the party who committed the first serious error, and if the plea should be held to be bad, judgment on the demurrer is properly rendered against the defendant." Atlantic Coast Line Ry. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761. Also see 18 Ency. of Pl. & Pr. 86. We have held that, under Section 1451 of the General Statutes of 1906, a plaintiff "may file as many replications or subsequent pleadings to any pleading of the defendant as he may desire," though we have said that the advisability of filing a number of replications was questionable. See Southern Home Insurance Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922, and Hartford Fire Insurance Co. v. Redding, *supra.* It will be observed that the defendant did not interpose a demurrer to the amended replications either jointly, severally, or jointly and severally, or file a motion to strike out or for compulsory reformation, as it might have done, if it conceived that such replications, or any of them, were insufficient or faulty in any respect. Instead of so doing, the defendant filed a rejoinder to all of such replications. If the demurrer interposed to the rejoinder be carried back to the replications, it must be considered as addressed to all of the replications as an entirety. It would necessarily follow that if any one of the replications is a good answer to the first plea, the judgment was properly rendered for

the plaintiff on the demurrer to the rejoinder. See the discussion and the authorities cited in Southern Home Insurance Co. v. Putnal, *supra*. It is unquestionably true, as we have already said, that the quality of certainty is especially requisite in replications and rejoinders. It is further true that, if there are several pleas, and the replication undertakes to answer one of such pleas, it must answer the whole of the plea which it professes to answer. 18 Ency. of Pl. & Pr. 655. But, as is said on page 656 of the work just cited, "The pleader may, however, reply to any one of several material allegations of the plea where each of such allegations is essential to its support, because the demolition of any one of them will effectually destroy the whole defense." Also see 31 Cyc. 250; Andrews' Stephens Pleading, section 138; Lawson v. State, 9 Ark. (4 Eng.) 9; Smith v. Olliphant, 2 Sandf. (N. Y) 306. Also see our holding in New York Life Insurance Co. v. Mills, 51 Fla. 256, 41 South. Rep. 603. We call attention to the fact that, while the different amended replications, if they be properly designated replications, instead of forming but a single replication, divided into numbered paragraphs for convenience, as would seem to be the case, are addressed to the first plea, in reality they go to separate portions of such plea. It is also obvious that such plea has several material and distinct averments. Whether considered as several replications directed to different or distinct material averments in the plea, or as one replication, separated into paragraphs, as said above, addressed to the plea as an entirety, we do not consider such replications or replication demurrable. In other words, we think that the replication, as we prefer to call it, constitutes a good answer to the first plea. Entertaining these views, we must hold that the sixth and seventh assignments have not been sustained.

We now reach the eighth and tenth assignments, which are argued together, the defendant's counsel stating in his brief: "The former alleges error in holding that plaintiff could secure reformation of the policies in an action at law, and the latter in permitting the plaintiff to recover judgment on different causes of action from those set forth in its declaration."

In discussing the preceding assignments, we have already held adversely to this contention of the defendant, so there is no occasion to say more here. We do not understand the order of the Circuit Court as holding that the plaintiff could secure reformation of the policies in an action at law. We have also said that we did not consider that the replications constituted a departure in pleading.

The ninth assignment is that "The Court erred in holding that Lowry & Prince had authority to abrogate the contracts represented by the policies sued on, and make new and different contracts with the plaintiff."

We have already discussed this assignment and expressed our views of the holding in Mutual Life Insurance Co. v. Hilton-Green, 241 U. S. 613, 36 Sup. Ct. Rep. 676, the only authority cited in support of such assignment. It must be held to have failed.

The only remaining assignment is the eleventh, which is as follows: "The Court erred in sustaining the demurrer of the plaintiff to the defendant's second plea." The second plea is copied in full in the prefatory statement. It was filed to the declaration as constituting a full and complete defense to the action upon the two policies. The declaration, as well as the attached policies, shows that the insurance was upon both real and personal property. The defendant rightly says that the policies may be divisible and cites Hartford Fire Insurance Co. v. Hollis, 64 Fla. 89, 59 South. Rep. 785. The only other

authorities cited by the defendant in support of this assignment are Georgia Home Insurance Co. v. Hoskins, 71 Fla. 282, 71 South. Rep. 285, and Section 1437 of the General Statutes of 1906, Compiled Laws of 1914, which is as follows: "All pleadings capable of being taken distributively shall be so taken." We do not see wherein these authorities avail the defendant in support of this assignment, therefore we must hold that it has not been sustained.

The judgment will be affirmed.

BROWNE. C. J., AND WHITFIELD AND WEST, J. J., concur.

TAYLOR AND ELLIS, J. J., dissent.

ELLIS, J., dissenting. I am unable to agree with the conclusion arrived at by the court in this case.

The defendant's first plea contained substantially the same averments of ultimate facts as its rejoinder, viz: The policies of insurance sued on were Pennsylvania contracts; that Lowry & Prince were not the defendant's agents, but were agents for the plaintiff only. The plea then avers that each policy contained a certain warranty which the plaintiff had violated. The replication of the plaintiff which considered in its entirety was a mere traverse of the averments of the plea as to the contract being a Pennsylvania contract and that Lowry & Prince were agents only of the plaintiff alleged the contracts to be Florida contracts and a waiver of the warranty by defendant through Lowry & Prince who were alleged to be the defendant's agents. Now the rejoinder merely took issue upon the allegations of the replication as to the contracts being Florida contracts and that Lowry &

Prince were defendant's agents and that the warranty had been waived, by averring that the contracts were made in Pennsylvania, that Lowry & Prince were not their agents and that the defendant had not waived the warranty.

If this rejoinder was true it constituted a perfect defense, because neither Section 2765 nor 2777 of the General Statutes of Florida, 1906, Florida Compiled Laws, 1914, can have any force or effect beyond the limits of the State of Florida by imposing upon the defendant and Lowry and Prince the relation of principal and agent *in invitum.* That a State cannot extend the operation of its statutes beyond its borders into the jurisdiction of another State is conceded to be true in the majority opinion, which contains excerpts from the opinion of Mr. Chief Justice WHITE of the Supreme Court of the United States in the case of New York Life Insurance Co. v. Head, 234 U. S. 149, 34 Sup. Ct. Rep. 879, upon that point. Therefore if Sections 2765 and 2777 of the General Statutes are to be applied in this case the defendant insurance company must be either a corporation of this State or actually doing business in this State through its officers or agents, or that the contracts sued on were made or executed in this State. This is true because the object upon which the statute acts, whether it be persons or things, must be within the State's jurisdiction. As Mr. Chief Justice WHITE said in the case referred to, there is a difference which in the nature of things must obtain "between questions concerning the operation and effect of a State law within its borders and upon the conduct of persons confessedly within its jurisdiction; and its right to extend its authority beyond its borders so as to control contracts made between citizens of other States and virtually in fact to disregard the law of such

other States by which the acts done were admittedly valid." That is the distinction which was drawn in the case of Hooper v. State of California, 155 U. S. 648, 15 Sup. Ct. Rep. 207, by the then Mr. Justice WHITE. A statute of California punished "every person who in this State procures or agrees to procure for a resident of this State any insurance" from a corporation not of that State unless it had filed the bond required by the statute relative to insurance. Hooper was the agent of certain insurance brokers in New York City. Mott, a resident of California, inquired of Hooper if he could procure a certain amount of insurance on a vessel named the "Alliance" at a given rate of premium, no particular company being specified by Mott. Hooper communicated with his principals in New York, who placed the insurance in a Boston Company and advised Hooper. The policy was forwarded by the New York brokers to Hooper, who delivered it to Mott, the latter paying the former the premium as the agent of the New York brokers. Hooper was arrested and charged with the misdemeanor denounced by the statute. It was contended by him that the statute was illegal because it undertook to forbid the procurement of a contract outside of the State, and the evidence showed that the contract in fact was entered into without the territory of California. Judge WHITE said that the admission that the insurance was procured for the resident from a foreign company which had no agent in the State did not exclude the possibility of its having been procured within the State. "If it were obtained for the resident by a *broker* who was himself a resident, this would be a procuring within the State and be covered by the statute." Hooper was an insurance broker; he was the representative of other insurance brokers who were in New York, and to the extent of pro-

curing the insurance was the representative of the insurance company, so that it might be said that he procured the insurance in California for a resident of that State. The statute however dealt with and operated upon the conduct of Hooper, a resident of and whose act was confessedly committed in the State of California. This view however was not concurred in by Justices HARLAN, BREWER and JACKSON, who thought that the application of the statute to the case was an illegal interference with the liberty both of Mott and Hooper as well as an abridgement of the privilege of the firm of New York brokers through whom the policy was obtained, and the fallacy of the argument lay in the assumption that Hooper was the agent of the insurance company. In the case of New York Life Insurance Co. v. Head, *supra,* the court simply held that a policy of insurance issued in Missouri and its provisions controlled and governed by the statutes of that State might be affected by a loan agreement made in New York in such a way as to change the liability of the insurer under the laws of Missouri. The loan was applied for by the beneficiary from New Mexico to the company in New York, and the court held that the loan agreement was a New York contract.

Now the defendant company was not a corporation of Florida, nor was it doing business in this State by and through any of its officers or agents so the pleadings admit. The only question therefore, so far as this point is concerned is, were the contracts sued upon Florida contracts, or were they made and executed in Pennsylvania? The rejoinder avers that the contracts sued on "were written and executed by the defendant in the State of Pennsylvania and thereupon delivered and sent by mail to the said Lowry & Prince at Tampa, Florida, as brokers of the plaintiff." "That Lowry & Prince were not agents of the

defendant, or authorized by it to make contracts of insurance, to accept risks, to write, sign or issue policies, to collect, receive or receipt for money on its account, to waive any provisions in the contract sued on or to represent it in any manner, shape or form," etc. These averments of fact being well pleaded were admitted by the demurrer. If, however, the rejoinder contains any averments which are inconsistent with or contradictory of those quoted it should be held to be bad on the demurrer; or if the language used has on its face two intendments, it will be tested by the weaker.

The attack made by the demurrer upon the rejoinder, however, can in the nature of the case receive no assistance whatever from the sections of the General Statutes referred to, until it appears from the pleadings that the contracts of insurance are Florida contracts, because until that is established they cannot be affected or controlled by the laws of Florida. The defendant is not a Florida corporation. It was not at the time the policies were issued nor had been represented in this State by any officer or representative, nor do the policies themselves contain any clause as to the intention of the parties concerning any place according to the laws of which they desired the contracts to be governed. Nor do they provide that the payment of the premium shall be a condition precedent to their taking effect. All this is shown by the pleadings and exhibits A and B, which are made part of the declaration. When the contracts were entered into therefore if Lowry & Prince were not the defendant's representative or agents then neither the proposition, acceptance nor delivery if necessary was made in this State. There was nothing so far as the defendant was concerned to which the statute could apply. If the contracts were made in this State, then certainly they will

be affected and controlled by the statutes of this State; but if they were not made here, but were made in some other jurisdiction, then as certainly the laws of this State do not control their provisions. Now the rejoinder expressly avers that the contracts were made in Pennsylvania, and denies that Lowry & Prince were defendant's representative. The court holds that inasmuch as the rejoinder admits that the defendant had written insurance on the plaintiff's property since 1908 continuously, and that Lowry & Prince transmitted to the defendant at Philadelphia the applications for such insurance and received by mail the policies for the plaintiff, and transmitted for the plaintiff the amount of the premiums less the usual brokers' commission, it is subject to the demurrer because such admissions show that the policies sued on were Florida contracts. This conclusion does not follow because a policy of fire insurance is a personal contract which like all such contracts is completed by the signature of the parties and the transfer of the consideration. It is a parol contract, not a sealed instrument, and may be proved as other parol contracts. See authorities cited in note to Stephenson v. Allison, reported in 138 Am. St. Rep. 26. It is a *simple* contract of indemnity against loss by fire. See Paul v. Virginia, 8 Wall. (U. S.) 168. The making of such a contract is a mere incident of commercial intercourse. See New York Life Ins. Co. v. Cravens, 178 U. S. 389, 20 Sup. Ct. Rep. 962. And the situs of the contract or place of consummation is determined by the place of acceptance, and not by the place of proposal. See Peters v. E. O. Painter Fertilizer Co., decided at the present term of this court. In that case Mr. Chief Justice BROWNE, speaking for the court, said: "A contract of sale may be made by the acceptance of an offer to sell as well as by the acceptance of an offer to

purchase, and where the last act necessary to complete the contract is performed, that is the place of the contract." The case follows the doctrine laid down by this court in Morgan v. Eaton, 59 Fla. 562, 52 South. Rep. 305, to which it refers. In the latter case the court, speaking through Mr. Justice TAYLOR, said: "It seems to be well settled law that where a person residing in one place makes a proposal to purchase property by letter to a person residing in another place and such proposal is there accepted, the place of acceptance, and not the place of the proposal, is the place of the contract. 22 Am. & Eng. Ency. Law, (2nd ed.) p. 1324, and numerous cases there cited." On this point therefore it is unnecessary to examine other authorities because the doctrine announced in the two cases cited is the settled law of this State, and by that doctrine this case must be tested as to the situs of the contracts sued upon for this court to be consistent.

Even when there is a local agent of the insurance company in the State where the property insured is located, but his authority is limited to receiving and forwarding applications to the insurer's home office for acceptance or rejection, there the contract will be deemed to have been made at such home office when a policy in substantial conformity to the application is mailed directly from such office to the insured or his agent in another State and no conditions precedent to its taking effect are expressly imposed and there is nothing in the transaction showing that the contract was intended to be left open until the receipt of the policy by the insured. See 2 Wharton on Conflict of Laws, 1011; State Mutual Fire Ins. Ass'n. v. Brinkley Stave & Heading Co., 61 Ark. 1, 31 S. W. Rep. 157, 29 L. R. A. 712; Northampton Mut. Live Stock Ins. Co. v. Tuttle, 40 N. J. L. 476; Rose v. Kimberly & Clark Co., 89 Wis. 545, 62 N. W. Rep. 526, 27 L. R. A. 556; Hart-

fort Steam-Boiler Ins. & Ins. Co. v. Lasher Stocking Co., 66 Vt. 439, 29 Atl. Rep. 629. The same rule applies where the policy is mailed to a third person who for the purposes of the transaction was, or was deemed to be the agent of the insured. See French v. People, 6 Colo. App. 311, 40 Pac. Rep. 463; Commonwealth Mut. Fire Ins. Co. v. William Knabe & Co. Mfg. Co., 171 Mass. 265, 50 N. E. Rep. 516; 3 Am. & Eng. Ency. Law, 551; May on Insurance, Sec. 66; Baker v. Spaulding, 71 Vt. 169, 42 Atl. Rep. 982; Galloway v. Standard Fire Ins. Co., 45 West Va. 237, 31 S. E. Rep. 969. The deposit of the policy in the mail at the home office of the insurer is a delivery and charges the insured with constructive notice of the acceptance of the proposition. Galloway v. Standard Fire Ins. Co., *supra.* The policies which are made part of the declaration contain clauses that they "shall not be valid until countersigned by the duly authorized agent of the company at Philadelphia, Pa." They were countersigned there as shown upon their face.

Now it cannot be said from the pleadings in this case that either notice to the plaintiff of the acceptance of its application by the defendants for the insurance, or the delivery of the policies to the insured or the payment of the premium by the insured were conditions precedent to the taking effect of the policies; nor can it be said that the insertion of the warranty was a condition imposed by the defendant materially changing the terms of the original proposition. As to the latter proposition it will be observed that the policies sued on are attached to the declaration and made a part of it by apt words. They contain the warranty on their faces. The plaintiff alleged in its replication that "Lowry & Prince caused the defendant to write the said first policy of 1908 and said Lowry & Prince caused and procured the defendant to renew said

policy from time to time and to finally write and issue policies here sued on," etc. From this allegation it appears that the application for the policies sued on contemplated the insertion of the warranty mentioned which from the pleading appears to have been contained in the policies issued prior to those sued on which seem to have been issued in the usual form containing the same warranties and conditions. I do not regard either the notice of acceptance by the defendant of the application for insurance nor the delivery of the policy to the plaintiff as conditions precedent to their taking effect because this court has held that the contract is consummated where the acceptance of the proposition takes place, not where notice of acceptance is received or delivery made, besides delivery of a policy of insurance is not essential to its validity. It is a simple, not a sealed contract and may be sued on although there has been no delivery of it to the insured. If the payment of the premium is regarded by some authorities as an implied condition precedent to the consummation of the contract it has not been so held in this State, which holds to the doctrine as stated that the place of acceptance of the proposition determines the place of the making of the contract; but whether that is true or not the determination of the point is unnecessary as the rejoinder avers that Lowry & Prince were not authorized to receive money on defendant's account, and that the plaintiff transmitted to the defendant by mail the amount of the premium through Lowry & Prince, which fact was admitted by the demurrer. Therefore it appears from the pleadings that the premium was paid not in this State, but in Pennsylvania.

There is no distinction between the contracts considered in the two Florida cases cited and the contracts sued on in this case that requires the application of different

VOL. 74, JUNE TERM, 1917.       181

Am. Fire Ins. Co. v. King Lumber & Mfg. Co.—Opinion of Court.

rules of law to determine their situs because a contract of insurance like the contracts involved in the two Florida cases cited is a personal contract and is a mere incident of commercial intercourse and is consummated or executed at the place of acceptance, and delivery is not necessary to its completion. See Stephenson v. Allison, 165 Ala. 238, 51 South. Rep. 622, 138 Am. St. Rep. 26. Now the proposition to insure was made by the plaintiff through Lowry & Prince, its agents, by letter to the defendant at Philadelphia; so much the pleadings admit. The proposition was accepted by the defendant at Philadelphia, and there the contracts were written and signed and there delivered to the United States postal service to be transmitted to Lowry and Prince for the plaintiff; this the pleading also show. When then did Lowry & Prince become the representatives of the defendant in the making of the contract? Not when they received the premiums from the plaintiff, because that was the plaintiff's act; besides, the contracts had then been executed. Nor when they transmitted the premiums to defendant by mail, because that was also the plaintiff's act. If the sections of the General Statutes referred to were intended to operate only upon the act of Lowry & Prince and affect them only, the case of Hooper v. State of California, *supra,* would be in point, and no doubt the case would be authority for holding them to answer to the statute's provisions; but in my opinion the statute cannot be made to operate through them upon a person or corporation beyond the limits of the State and affect the provisions of a contract made elsewhere.

The act of Lowry & Prince in retaining from the amount of the premiums which they were instructed by the plaintiff to forward to the defendant the "usual brokers' commission" did not have the effect of changing the situs of

the contracts and constitute them the defendant's agents for "all intents and purposes" so that they could alter the terms of the contract which had been made in Pennsylvania. That is to say, constitute them the agents of the defendant to make a new contract of insurance or waive any warranty in the old ones. The case of Davis Lumber Co. v. Hartford Fire Ins. Co., 95 Wis. 226, 70 N. W. Rep. 84, 37 L. R. A. 131, referred to in the majority opinion is not in my judgment in point, because in that case the policies of insurance under consideration were Wisconsin contracts, and the court merely held that under a statute similar to the Florida statute one who procures insurance for another may be the agent for some purposes of both the insurer and insured. In the case of Schomer v. Hekla F. Ins. Co., 50 Wis. 575, 7 N. W. Rep. 544, the defendant company was doing business in Wisconsin directly through local agents to whom Lawson who was employed by plaintiff to obtain insurance applied for the policies, and it appears that they were executed in Wisconsin. In the case of Rose v. Kimberly & Clark Co., 89 Wis. 545, 62 N. W. Rep. 526, 27 L. R. A. 556, which was a suit on a policy of insurance by the receiver of the company for an assessment, it appeared that the policy was written in Illinois by a company not authorized to do business in Wisconsin. The court applied the *Lex Fori* and held that the contract could not be enforced in Wisconsin, but not doubting that it was a valid contract of Illinois. See also 5 R. C. L. p. 941. In the case of Presbyterian Ministers' Fund v. Thomas, 126 Wis. 281, 105 N. W. Rep. 801, also cited in the majority opinion the court had under consideration a statute of Wisconsin which prohibited any corporation from doing any business of insurance of any kind in *Wisconsin or* with any *resident* of that State except according to the conditions

and restrictions of the statute. A resident of Wisconsin applied by letter to the Insurance Company at Philadelphia for life insurance. The application was accepted, the policy sent to the applicant who gave his notes for the premium payable at Philadelphia. The company had not complied with the conditions and restrictions of the Wisconsin statute. The note was not paid and the company brought suit in Wisconsin to recover on the note. The court held that the contract was made in Philadelphia, but as it was made with a resident of Wisconsin contrary to the laws of that State, it would not be enforced in that State. In Wisconsin Cent. R. Co. v. Phoenix Ins. Co., 123 Wis. 313, 101 N. W. Rep. 703, the question is not discussed, but it appears that the Insurance Company was represented in Wisconsin by agents and the policies issued in that State. In Wicks Bros. v. Scottish Union & National Ins. Co., 107 Wis. 606, 83 N. W. Rep. 781, the question was upon the right to cancel. The court held that the right to cancel exists only by contract. The policies were issued in Wisconsin. The other Wisconsin cases referred to are deemed to be not in point as the contracts sued upon were made in the State of Wisconsin by the defendant's acknowledged agents. It is undoubtedly true that considerations of public policy demand that an insurance company entering a State in defiance of a statute which lawfully prescribes the terms upon which it may exert its powers there, should be held to have assented to such terms as to business transacted there, as was said by Mr. Justice HARLAN in Old Wayne Mut. Life Ass'n. of Indianapolis v. McDonough, 204 U. S. 8, 27 Sup. Ct. Rep. 236, yet such assent cannot be assumed as to business transacted in another State although with citizens of the former State. The defendant in this case, according to the pleadings, transacted no business in

Florida through its officers or agents, and therefore did not subject itself to any provision of the statutes of this State. It had a right to enter into the contract of insurance in Pennsylvania with a citizen of Florida for the purpose of insuring the latter's property in this State which it did. Any act of the legislature which would impose upon the defendant in such case, without its consent, conditions and liabilities which it did not assume by the contract would be invalid. See Allgeyer v. State of Louisiana, 165 U. S. 578, 17 Sup. Ct. Rep. 427. The act therefore should not be given that construction.

The case of Miller Brewing Co. v. Council Bluffs Ins. Co., 95 Iowa 31, 63 N. W. Rep. 565, decided in 1895 upon a contract made in 1887 where the Supreme Court of that State held in effect that the mere writing of insurance upon property located in one State by a foreign insurance company of another State at its home office was the transaction of business in the former State I think is contrary to the view entertained by the Supreme Court of the United States in Allgeyer v. State of Louisiana, *supra*. I think the order of the court sustaining the demurrer to the rejoinder was erroneous, and the judgment should be reversed.

TAYLOR, J., concurs.

### On Hearing.

PER CURIAM.—The declaration is in the statutory form and alleges that the "defendant issued to the plaintiff its two certain policies of insurance on the 8th day of April, 1912, and thereby promised" &c. The policies were not "declared upon in the declaration as Pennsylvania contracts, effected in the State of Pennsylvania on April 8th,

VOL 74, JUNE TERM, 1917.          185

Am. Fire Ins. Co. v. King Lumber & Mfg. Co.—Opinion of Court.

1912, the date they were signed there by the officers of the insurance company."

Section 2765, General Statutes, 1906, defines who "shall be deemed to all intents and purposes an agent or representative of" *any* insurance company as follows:  "Any person or firm in this State, who receives or receipts for any money on account of or for any contract of insurance made by him or them, or for such insurance company, association, firm or individual, aforesaid, or who receives or receipts for money from other persons to be transmitted to any such company, association, firm or individual, aforesaid, for a policy of insurance, or any renewal thereof, although such policy of insurance is not signed by him or them, as agent or representative of such company, association, firm or individual, or who in any wise, directly or indirectly makes or causes to be made, any contract of insurance for or on account of such insurance company, association, firm or individual, shall be deemed to all intents and purposes an agent or representative of such company, association, firm or individual."

Any person or firm in this State doing the acts defined in this section for any insurance company, by the terms of the law "shall be deemed to all intents and purposes an agent or representative of such company." This does not limit the agency "to the particular acts" done by the agent or representative for the insurance company.

The demurrer to the rejoinder does not admit asserted conclusions of law that Lowry & Prince were not agents of the insurance company and as to the situs of the contract. In the rejoinder *facts are alleged* that the court holds to be sufficient to make Lowry & Prince the agents of the insurance company under the statute and that such

agency makes the policy subject to the jurisdiction of this State.

Rehearing denied.

BROWNE, C. J., AND WHITFIELD AND WEST, J. J., concur.

TAYLOR AND ELLIS, J. J., dissent.

Petition for Rehearing Denied January 10, 1918.